THE STATE OF KANSAS v. GEORGE D. BUTTS, et al.

REGISTRATION LAW OF 1879, *Valid.* The registration law of 1879, (Laws 1879, chapter 80,) was enacted in the discharge of the duty imposed on the legislature by § 4, article 5, of the state constitution, and does not conflict with the other sections of said article 5, or with § 17, article 2.

*Appeal from Shawnee District Court.*

INFORMATION, charging defendants with a criminal offense in receiving an illegal vote while acting as judges of a legal election held in the second ward of the city of Topeka on the 3d of April, 1883. On motion of defendants, the district court of Shawnee county, at the April Term, 1883, quashed the information. *The State* appeals.

The facts, briefly, are these: Topeka is a city of the first class. ' The defendants were the judges at the election named. One W. C. Webb, who had resided in said second ward and had regularly voted therein for many years, appeared at the proper voting-place therein on the day of the election fixed for choosing city officers in April, 1883, and offered his ballot for certain persons for city officers, claiming the right of

an elector to vote at such election. The defendants, acting as judges at such election, were advised and well knew that said W. C. Webb had not been "registered" as a voter as required by chapter 80, Laws of 1879, "An act to provide for and to regulate the registration of voters in cities of the first class and second class." It was admitted, and the information so states, that said W. C. Webb possessed all the qualifications of an elector required by article five of the state constitution, and was entitled to vote at such election unless disqualified by reason of non-compliance with said registration act.

*A. H. Vance*, county attorney, for The State:

Is the registration act of 1879 valid? If that act is valid, then the district court erred in quashing the information. An offense under the laws of this state is clearly charged. The officers constituting the election board are charged with the performance of delicate and responsible duties. The safety and perpetuity of government, in this country, depend upon the purity of popular elections. No person not legally entitled to vote should be allowed to vote; and the statute makes it a crime on the part of election boards to "knowingly and willfully commit any irregularity or fraud whatever with the intent to hinder, prevent or defeat a fair expression of the popular will." (Gen. Stat., ch. 31, § 219.)

The registration act of 1879 requires every person who wishes to vote at any legal election held in any city of the first class and any city of the second class, to apply in person to the city clerk of such city and be registered as an elector at least ten days next before such election. This act was passed pursuant to the command of § 4 of the suffrage article of the state constitution. The city clerk is authorized to fully inquire respecting the constitutional qualifications of the applicant, and if he finds him qualified he is duly registered as an elector. That fixes the applicant's right to vote. The proceeding is very simple and very reasonable. The object is to advise the boards of election in the several wards, (such

boards being furnished with the registration book for their ward,) as to who are entitled to vote, and thus save disputes and contentions on election day, and insure ample time for all legal voters to vote. And § 9 of the act expressly provides that "No person shall be entitled to vote at any election in any such city who is not registered according to the provisions of this act."

The information expressly charges that the defendants knew that the person named therein had not been registered as a voter: that is, they knew he was not a qualified voter, and had no right to vote at such election. Yet they received his vote, put it in the ballot-box, and counted it — thus knowingly and willfully committing a fraud calculated to prevent or defeat a fair expression of the popular will — as, if one illegal vote may be received and counted, any number of illegal votes may in like manner be received, and the intention of the electors be wholly defeated by scheming or wicked election boards.

The information clearly charges a public offense, and the order of the district court should be reversed.

*W. C. Webb,* for defendants:

Is said registration act of 1879 valid? The defendants contend, *first,* that a "registration act," such as the constitution authorizes, must be a "general law," having uniform operation throughout the state; and *second,* whether having a general or only a local application, any registration act which deprives a person of the right to vote, although he has every qualification which the constitution makes necessary, is void.

1. The fifth article of the constitution relates to suffrage. Section one of said article prescribes what is necessary to constitute a "qualified elector." He must be a male person, of twenty-one years of age and upwards; he must have resided in Kansas six months next preceding any election at which he offers to vote, and in the township or ward where he offers his vote at least thirty days next preceding such election, and he must be a citizen of the United States, or a person of for-

eign birth who has declared his intention to become a citizen conformably to the laws of the United States on the subject of naturalization.    These are all the qualifications prescribed in or by the constitution, and they apply to all voters alike throughout the state, without regard to particular place, or particular residence.

The *disqualifications* of those who might otherwise be entitled to vote are specified in section two of said article. These disqualifications, when classified, are as follows: 1st, Persons under guardianship, *non compos mentis*, or insane. 2d, Persons convicted of felony, unless restored to civil rights. 3d, Persons who have been dishonorably discharged from the service of the United States, unless reinstated.    4th. Persons guilty of defrauding the government of the United States, or any of the states thereof.    5th, Persons guilty of giving or receiving a bribe, or offering to give or receive a bribe.    6th, Persons who have ever voluntarily borne arms against the government of the United States, or in any manner voluntarily aided or abetted in the attempted overthrow of said government, except all persons who have been honorably discharged from the military service of the United States since the first day of April, 1861, provided that they have served one year or more therein, unless such disability shall be removed by a law passed by a vote of two-thirds of all the members of both branches of the legislature.

Here are six classes of persons who are disqualified to vote in this state; and the disqualification does not depend upon *locality*.    If a person is disqualified in one township or ward, he is disqualified everywhere within the state.    Tried by the constitutional test, and said W. C. Webb was not disqualified; but on the contrary, he was a qualified voter.

The constitution makes no attempt to make "registration" a necessary qualification, nor a failure to be duly registered as an elector a disqualification; and the legislature cannot add or prescribe any additional requisites, nor any additional disabilities.    The right to exercise the elective franchise is measured and determined by the constitution itself.    Under

the constitution as it is, the legislature cannot confer the right of suffrage upon women, nor upon minors, nor upon any person who has resided in the state for a less period than six months. Nor can it legally declare that no man shall vote unless he has been "registered" in a particular manner, nor for a certain length of time before the day of the election at which he offers to vote, any more than it can require a year's residence in the state, or restrict the right of suffrage to persons over the age of twenty-five years. The case of *The State of Wisconsin, ex rel. Knowlton, v. Williams*, 5 Wis. 308, is directly in point. Article 3 of the constitution of Wisconsin prescribes the qualifications and declares the disqualifications of voters. One of the qualifications required is "one year's residence in the state next preceding any election." The constitution of that state is silent respecting residence in county, township, or ward; so, by implication, *actual residence* in the township or ward at the time of offering his vote, if the person offering to vote possesses the other qualifications, is sufficient, although he may have moved into such township or ward only that day or the day next preceding. In 1856 the legislature of Wisconsin passed an act to provide for the removal of a county seat, which act provided that " no person shall be deemed qualified to vote upon the question of the removal of the county seat provided for in this act *unless he shall have resided in the town where he offers to vote at least thirty days previous to the*" day fixed for the election. In the case cited, *The State v. Williams*, 5 Wis. 308, the validity of said act was questioned upon the ground that it fixed a qualification and prescribed a disqualification not found in nor authorized by the constitution. The following is from the syllabus:

"By the term 'voters of the county,' in § 8 of article 13 of the constitution, in reference to the removal of county seats, is meant those who have a right to vote at elections held for state officers; and an act of the legislature which prescribes a qualification for an elector under its provisions *additional to those prescribed by the constitution*, as a previous residence.

of thirty days in the town where the elector offers his vote, *is repugnant to the constitution, and void."*

Now the Kansas registration act of 1879 is obnoxious to the constitution equally with the statute held void by the Wisconsin court. Our statute contains this provision:

"SEC. 9. No person shall be entitled to vote at any election in any such city who is not registered according to the provisions of this act." (Laws of 1879, p. 160.)

Registration is thus made a qualification additional to those prescribed by the constitution; and non-registration is made an absolute disqualification. Clearly said § 9 is void, and its invalidity vitiates the whole act.

Attention should also be called to § 11 of said registration act. This section empowers the city clerk "to administer all necessary oaths," and "to examine the applicant for registration, or any witness he may offer," to ascertain his right to be registered; and the section concludes thus: "If the applicant for registration will be entitled to vote at the next ensuing election he shall be entitled to registration, *otherwise he shall not be registered.*" This is a marvelous section. It makes the *city clerk* the absolute and exclusive judge of every person's right to vote. And there is no appeal to any judicial tribunal, no review of the action of the city clerk.

2. Equally fatal to the registration act is the objection that, although in the highest sense a general law, it is by its very terms limited or restricted to a very small portion of the state. It is not contended that the legislature cannot pass a general registration law which would be valid. On the contrary, express authority is given for such legislation. Section four of the fifth article of the constitution provides that—

"The legislature shall pass such laws as may be necessary for ascertaining by proper proofs the citizens who shall be entitled to the right of suffrage hereby established."

Now the right of suffrage established by the constitution of necessity is and must be uniform throughout the state. The qualifications to constitute a voter in a city of the first

class must be and are the same as those required to constitute a voter in any rural precinct; and no disqualification is declared in the constitution affecting a person residing in a city which ceases or is determined upon a removal of such person from a city to any part of the state outside a city; nor can the legislature legally declare any such disqualification.   Whatever law is passed pursuant to § 4 above quoted must be a general law operative alike in all parts of the state, and applicable alike to all voters in the state.   This is not only implied from the fact that the authority to pass such law is given in the article relating to "suffrage," but § 17 of article 2 of the constitution expressly declares that "all laws of a general nature shall have a uniform operation throughout the state."   Most assuredly, a law having for its object and purpose the ascertainment of *what citizens of the state* are entitled to the right of suffrage established by the constitution, must have uniform operation throughout all the territory covered by that constitution.   Any act which comes short of this is and must be void.   Now the registration act of 1879, as before stated, by its very terms is applicable only to "cities of the first class and second class."   The court takes judicial notice of the existence and location of cities as well as of counties; and it needs no argument to show that the territorial area of all the "cities of the first class and second class" in the state, aggregated, is not equal to the territorial area of the single county of Shawnee.   A statute of a general nature, thus limited in its operation, cannot be upheld.

3. So far the case at bar has been considered as an original question, depending alone upon the proper construction of the constitution.   But it may be contended that Judge Cooley has expressed an adverse opinion.   We do not think so. True, while in his work on Constitutional Limitations he has twice explicitly stated that "the legislature cannot add to the constitutional qualifications of voters," (p. 64, note 1, and p. 601,) he nevertheless, at page 601, says:

"It must yet devolve upon the legislature to establish such regulations as will enable all persons entitled to vote to ex-

ercise that privilege freely and securely, and exclude all who are not entitled from improper participation therein. . . . In some of the states it has also been regarded as important that lists of voters should be prepared before the day of election, in which should be registered the name of every person qualified to vote. . . . When the *constitution* has established no such rule, *and is entirely silent on the subject,* it has sometimes been claimed that the statute requiring voters to be registered before the day of election, and excluding from the right all whose names do not appear upon the list, was unconstitutional and void, as adding *another test* to the qualifications of electors which the constitution has prescribed, and as having the effect, where electors are not registered, to exclude from voting persons who have an absolute right to that franchise by the fundamental law. This position, however, has not been accepted as sound by the courts. The provision for a registry deprives no one of his right, but is only a reasonable regulation under which the right may be exercised."

It will be observed that what Judge Cooley says has application only in states where the " constitution is entirely silent" on the subject of registration. Our constitution is not only not silent, but by plain words imperatively requires the legislature to "pass such laws as may be *necessary* for ascertaining *by proper proofs* the citizens who shall be entitled to the right of suffrage *hereby* [that is, by the constitution itself] *established."* And as the "right of suffrage" *established by the constitution* is uniform throughout the state, and the sole power given is to pass necessary laws for *ascertaining what citizens possess the qualifications named in the constitution,* it follows that in Kansas the legislature cannot make nor authorize any tribunal or person to make registration an indispensable condition to voting. When it does so, whether the law be general or local, it creates *not* "another *test* to the qualifications of electors"—an expression of Judge Cooley's which is neither happy nor clear—but an additional qualification; and this Judge Cooley himself says cannot be done.

In support of the views expressed by Judge Cooley, (Const. Lim., p. 601, 2d ed.,) and immediately after the sentence,

"The provision for a registry deprives no one of his right, but is only a reasonable regulation under which the right may be exercised," he cites four cases, namely, *Capen v. Foster*, 12 Pick. 485; *People v. Kopplekom*, 16 Mich. 342; *State v. Bond*, 38 Mo. 425; *State v. Hilmantel*, 21 Wis. 566. An examination of these cases will show that in Michigan, Missouri and Wisconsin the statute in question was a general law operating uniformly throughout the state. The Massachusetts case was decided in 1832, and arose under a section of the act establishing the city of Boston, which provisions, the court say, (12 Pick., marg. p. 488,) "are substantially like those of the general law regulating elections," and the case is therefore treated as if it had arisen under said general statute. In Michigan, and also in Missouri, the constitution requires a "registration" of electors. (16 Mich. 346; 38 Mo. 427.) In Wisconsin the statute contained a clause providing that an *unregistered* elector might vote upon making proper proofs on election day when tendering his vote. We quote:

"SEC. 7, (ch. 445, Laws of 1864.) No vote shall be received at any annual election in this state unless the name of the person offering to vote be on the registry made on the Tuesday or Wednesday preceding the election, *unless the person offering to vote* shall furnish the board of inspectors his affidavit in writing giving his reasons for not appearing on the day for correcting the alphabetical list, and prove by the oath of a householder of the district in which he offers his vote that he knows such person to be an inhabitant of the district, and, if in any incorporated city or village, giving the residence of such person within said district." (21 Wis. 567.)

Now, with such a clause in every registration act as that in the Wisconsin section above quoted, beginning with the words, "unless the person so offering to vote," Judge Cooley might well say that a provision for a registry "deprives no one of his right, but is only a reasonable regulation." But his language should not be given a reach beyond the scope of the cases and statutes he cites; and when limited to such cases, as beyond question he intended it should be, his opinion is not in conflict with the views hereinbefore expressed.

35—31 KAS.

The case of *Edmunds v. Banbury*, 28 Iowa, 267, is like the case in 21 Wis.; and the Iowa statute is like that of Wisconsin; 28 Iowa, 270. Should it be deemed necessary to inquire what laws are "laws of a general nature," the court will find the case of *McGill v. The State*, 34 Ohio St. 228, instructive; and see also *Dells v. Kennedy*, 49 Wis. 555.

4. The suffrage article in the constitution has been somewhat considered by this court several times; and if the decisions made have any bearing on the question now under discussion, their effect is in support of the proposition that the legislature cannot prescribe any qualification for an elector, nor impose any restriction, additional to those particularly ·mentioned in the constitution.

The case of *Hunt v. Richards*, 4 Kas. 549, was a civil action brought by Hunt against the judges of the election held in Leavenworth in November, 1867, for refusing to receive his vote. The petition showed that the plaintiff possessed all the qualifications of an elector prescribed by the constitution, but it showed the further fact that he was an officer in the regular army of the United States. The district court sustained a demurrer to the petition. The case involved the construction of section three of the suffrage article of the constitution as amended in 1864. On appeal to this court, the judgment of the district court was reversed. The court held that the disqualification of all "soldiers, seamen, or marines," found in original section three, had been removed by the amendment of 1864; and the court says, pp. 553 and 554:

"We must look to other provisions of the article on suffrage to determine the status of the plaintiff [respecting his right to vote.] We conclude that a white male person of twenty-one years or upwards, being a citizen of the United States, or having declared his intention to become such, as required by law, who has resided in Kansas six months next preceding any election, and in the township or ward in which he offers to vote at least thirty days next preceding such election, *is a legal voter in Kansas*."

Here is an explicit recognition of the force and effect of the constitutional declaration of who are "qualified electors."

In *Winans v. Williams*, 5 Kas. 227, the plaintiff was a woman, who claimed the right to vote for state and county superintendent of public instruction. The court held that as the constitution restricted the right of suffrage to *males*, the plaintiff was not a legal voter.

In *Anthony v. Halderman*, 7 Kas. 50, the right of colored men to vote in Kansas was raised. Our state constitution, adopted in 1859, designates "*white* male persons." The fifteenth amendment to the constitution of the United States was promulgated March 30th, 1870. In April, 1870, Anthony and Halderman were opposing candidates for mayor of Leavenworth. The petition alleged that certain colored men, naming them, were "residents of said city, to wit, of the fourth ward thereof; that each of said persons was on said 30th of March, 1870, a free male person, over the age of twenty-one years, a citizen of the United States, and had *resided in said city* more than six months;" and it alleged that said persons had applied to vote at the city election held on the 5th of April, and tendered ballots with plaintiff's name thereon for mayor, and were refused, and their ballots rejected. The court, opinion, page 62, says that the effect of the fifteenth amendment to the federal constitution was to place the colored man in the matter of suffrage on the same basis as the white, subject to the same restrictions as to age, residence, etc.; but as the petition nowhere alleged that the persons named "had resided *in the ward* in which they offered to vote thirty days prior to such election," it failed to show that they were qualified voters. The logic of the case of *Anthony v. Halderman* is, *that the constitution itself* fixes and declares the qualifications of electors; that persons not possessing *those qualifications* cannot vote, and that in accordance with the maxim, *Expressio unius, est exclusio alterius,* as applied to constitutions and statutes, (Broom's Legal Max., 638 to 640,) certain qualifications being specifically named in the constitution, additional ones cannot be declared.

The only remaining case in which the qualifications of electors may be said to have been discussed by this court is

that of *Wheeler v. Brady*, 15 Kas. 26.    This case decides that
"a person having all the qualifications of an elector, as defined
by § 1 of the suffrage article of the constitution, except that
such person is a woman, has a legal right to vote at a school-
district election for school-district treasurer."    But in order
to so hold and decide, the court of necessity must, *as it did*,
hold that school-district officers and school-district elections
were alike unknown to the constitution, and that it was per-
fectly competent for the legislature to say what school-district
officers should be chosen, and in what manner, and by what
persons.    This decision has never been satisfactory to the
writer of this brief.    The educational interests of the state,
and school districts, are both distinctly recognized by the
constitution.    Such districts must have officers to conduct and
manage their affairs, and as the legislature had power to provide
that such officers should be chosen by *election*, it would seem to
follow that electors voting at such elections must possess the
qualifications required by § 1 of the suffrage article of the
constitution.

5. The writer hereof is not opposed to a *general* registration
law, but on the contrary is decidedly in favor of any legisla-
tion which, while securing to every legal voter his right to
vote, will yet exclude all illegal votes and corrupt practices.
A general registration law is no doubt authorized by the con-
stitution, and such an act was passed in 1867, (p. 190, ch. 112.)
This act contained a clause which practically prevented a non-
registered person from voting.    Instead of amending it and
making it useful, the act was repealed in 1868, (p. 1127, § 2.)
In 1869 a registration act was passed applicable in terms to
"cities of the first class"—applicable in fact to the city of
Leavenworth only; and this act was amended in 1870.

"The legislature *shall pass* such laws as may be necessary
for ascertaining by proper proofs the citizens who shall be
entitled to the right of suffrage hereby established," is the
language of § 4 of the suffrage article of the constitution.
The legislature has at all times deemed this clause imperative,
and has enacted from time to time such laws as it deemed

necessary, requiring " proper proofs " to be made.  ( See Election Law, Gen. Stat., ch. 36.)    Sec. 9 prescribes rules determining township and ward residence; §§ 10 and 12 require every person challenged at the polls to make proof of all the qualifications mentioned in the constitution; § 11 authorizes the judges of election to refuse the vote of anyone who refuses to be sworn when challenged; and § 13 authorizes the judges to refuse any vote when satisfied the person offering it is not a legal voter.    Other sections of this act, and of the crimes act, provide for punishing illegal voting.    All these provisions are general laws, operating uniformly throughout the state. May it not be said that they provide for "proper proofs," within the meaning of § 4 above quoted?    Other rules may be necessary also; and registration may be a very proper rule. But whatever provisions may be necessary are of course to be judged of and determined by the legislature, subject to constitutional limitations.    The power to add new qualifications or new disabilities is not authorized, nor at all necessary to the ascertainment "by proper proofs" what persons possess those qualifications which the constitution prescribes.    If the constitution in words required the legislature to "ascertain by proper proofs" what persons were "*males*," to authorize such persons to vote, it would be most ridiculously absurd for the legislature, under the pretense of so doing, to say that no person should vote unless the proper proofs showed such person to be a *woman!*   Yet such a proceeding would be no greater departure from the constitutional requirement than is section 9 of the act of 1879 from the purpose of section 4 of article 5 of the state constitution.

An intelligent and just registration law is eminently proper to facilitate the determination by election boards of questions arising respecting the rights of suffrage of persons offering their votes, and to facilitate the receiving and recording of legal votes.    But when any citizen of the state, possessing the qualifications prescribed by the constitution, *and not disqualified by that instrument,* offers his vote, and makes proof of his constitutional qualifications, his vote should be re-

ceived. The defendants committed no illegal act in receiving the ballot in question. They performed but their legal duty in accepting the ballot and in placing it in the ballot-box; and the order and judgment of the district court quashing the information should be affirmed.

The opinion of the court was delivered by

BREWER, J.: The question in this case is as to the constitutionality of the registration act. (Laws 1879, ch. 80.) It is objected, first, that it conflicts with section 17, article 2, of the constitution — the section which requires that all laws of a general nature shall have a uniform operation throughout the state. The act in terms only applies to cities of the first and second class. The objection is not well taken. It is true that the constitution directs the legislature to enact suitable registration laws; (art. 5, § 4.) It may be that this implies the registration of all voters; but the manner of registration is not prescribed. This is left to the discretion of the legislature. "Such laws as may be necessary," is the language. Who besides the legislature, the law-making body, can decide this question of necessity? It may deem one provision adequate for country precincts, while the conditions of city life require other and more stringent rules. Obviously the conditions and dangers are different; and if it may prescribe one rule for cities and one rule for rural districts, then a separate law for either is good, and the validity of neither will depend on the terms or even the existence of the other. There is no difference between this and other subjects of legislation; and if the law applies to all matters and things of the same nature and in the same condition, the courts may not interfere because it does not reach to matters of a different nature or in a different condition. Such is the general import of our decisions, as well as of those of other states.

The second objection is, that it places an additional qualification on the right of suffrage. Who are electors, and who may vote, is defined by the constitution. Every one having the qualifications prescribed is entitled to vote; and to say

that he must also be registered is to prescribe an additional qualification. This is the only substantial question in the case. Upon it, courts have differed. It is well in the first place to see what the provisions of the registry law are.

The city clerk is made the registering officer, and a poll-book is required to be kept in his office at all times; (sections 2 and 3.) All citizens must be registered annually, and registration is *prima facie* evidence of the right to vote at any election during the year of the registry; (section 4.) The clerk is required to give ten days' notice in some newspaper immediately on receipt of the poll-book, that it is open for registry; (section 5.) The poll-books are to be opened at all times during the year for registration, except during the ten days prior to any election; and of the closing of the books prior to such election the clerk is to give at least five days' notice, by publication for three days in some newspaper; (section 6.) The registration book is to contain the date of registering, the name of the person registered, his age, occupation, and residence; (section 7.) No person is to be registered unless he personally appears before the city clerk at the city clerk's office and gives his name, age, etc., as required to be entered in the registration book; (section 8.) No person is allowed to vote unless registered; but the registry is not conclusive evidence of his right, and he may be challenged on election-day at the polls; (section 9.) The clerk will give to each person registered a certificate thereof; (section 10.) The city clerk is authorized to administer all necessary oaths, to examine the applicant for registering, or any witness he may offer in his behalf, in order to ascertain his right to be registered. If he will be entitled to vote at the next ensuing election, he shall be registered; otherwise not; (section 11.) On change of residence during the year, the change is to be noticed on the registry; (section 12.) The city clerk immediately upon the close of the poll-books preceding any election shall make a true, correct and certified copy thereof, and deliver the copy for each ward at the voting precincts of such ward to one of the judges of election; (section 13.) And at

every election, as each person registered votes, one of the judges shall enter on such copy in the check-line opposite the name of such person the word, "Voted." This copy, after the election, is to be returned to the city clerk, and by him preserved; (section 14.) Other provisions prescribe penalties for violations of this statute.

It is evident that a proper enforcement of this statute, in securing ten days before every election a full registry of all persons entitled to vote, furnishes a very efficient check against fraudulent voting. At any election in which much interest is felt, and where the opposing parties are supposed to be nearly equal in numbers, most careful scrutiny will be made of these registry lists, every voter's name and residence taken, and his right to vote verified by examination. The matter will not be left to the pressure and excitement of election-day, but will all be ascertained and determined prior thereto. The value of such a registry for the preservation of the purity of the ballot-box cannot be too highly estimated.

The specific objections made to the validity of the statute are, that the registry is to be completed ten days before any election, and that one who is not thus registered cannot vote, notwithstanding he possesses all the qualifications of an elector prescribed by the constitution; and also, that the city clerk is given the power to determine who is and who is not entitled to registry, and therefore practically determines who may and who may not vote. The first of these, as heretofore stated, is really the serious objection. Cooley, in his work on Constitutional Limitations, page 601, makes these observations upon this question:

"In some of the states it is regarded as important that lists of voters should be prepared before the day of election, in which should be registered the name of every person qualified to vote. By this arrangement the officers whose duty it is to administer the election laws are enabled to proceed with more deliberation in the discharge of their duties, and to avoid the haste and confusion that must attend the determination upon election-day of the various and sometimes difficult questions concerning the right of individuals to exercise this important

franchise. Electors also, by means of this registry, are notified in advance what persons claim the right to vote, and are enabled to make the necessary examination to determine whether the claim is well founded, and to exercise the right of challenge if satisfied any person registered is unqualified. When the constitution has established no such rule, and is entirely silent on the subject, it has been sometimes claimed that the statute requiring voters to be registered before the day of election, and excluding from the right all whose names do not appear upon the list, was unconstitutional and void, as adding another test to the qualifications of electors which the constitution has prescribed, and as having the effect, where electors are not registered, to exclude from voting persons who have an absolute right to that franchise by the fundamental law. This position, however, has not been accepted as sound by the courts. The provision for a registry deprives no one of his right, but is only a reasonable regulation under which the right may be exercised."

In support of the conclusions expressed by him, may be cited the following cases: *Capen v. Foster*, 12 Pick. 485, where the question is fully and exhaustively considered by Chief Justice Shaw; *Hyde v. Brush*, 34 Conn. 454; *People v. Kopplekom*, 16 Mich. 342; *Edmunds v. Banbury*, 28 Iowa, 267; *People v. Laine*, 33 Cal. 55; *Webster v. Byrnes*, 34 Cal. 273; *Byler v. Asher*, 47 Ill. 101; *People v. Wilson*, 62 N. Y. 186; *Davis v. School District*, 44 N. H. 398; *Patterson v. Barlow*, 60 Pa. St. 54; *Auld v. Walton*, 12 La. An. 129; *Harris v. Whitcomb*, 4 Gray, 433. And against these conclusions, *Page v. Allen*, 58 Pa. St. 338; *Dells v. Kennedy*, 49 Wis. 555.

It is true that in some of the states from which those decisions are cited, the statute provided that a person not registered might, on producing certain affidavits on the day of election, and furnishing certain reasons for failure to register, be allowed to vote. So that all those decisions do not meet the precise objection raised here. But it is also true, that the decisions against the conclusions of Justice Cooley were all of them by divided courts; so that we think the weight of authority is with that author. We think too the decision is

right on principle. Our constitution, art. 5, sec. 4, requires that "the legislature shall pass such laws as may be necessary for ascertaining, by proper proofs, the citizens who shall be entitled to the right of suffrage hereby established." It seems to us that this manifestly contemplates a registration prior to the day of election. It will be borne in mind that at the time this constitution was adopted, the uniform practice as to elections was to keep a list of those who voted. It was also the privilege of every citizen to challenge the vote of any one offering to vote whose right to vote he suspected, and the party challenged was called upon to prove by his own oath or otherwise his possession of the qualifications of an elector. So that when the framers of the constitution introduced this section into it, something more was intended than the mere preservation of a poll-list on the day of election, and the ascertaining of the qualification of the voters by challenges on that day. Obviously, what was contemplated was the ascertaining beforehand, by proper proof, of the persons who should on the day of election be entitled to vote; and any reasonable provision for making such ascertainment must be upheld. Requiring a party to be registered, is not in any true sense imposing an additional qualification, any more than requiring a voter to go to a specific place for the purpose of voting, or requiring him to prove by his own oath or the oaths of other parties his right to vote when challenged, or than requiring a naturalized foreigner to present his naturalization papers. Each and all of these are simply matters of proof, steps to be taken in order to ascertain who and who are not entitled to vote. Doubtless under the pretense of registration, and under the pretext of securing evidence of voters' qualifications, laws might be framed which would cast so much burden as really to be imposing additional qualifications. As for instance, suppose the law required all voters in the state to be registered on personal attendance at the state capitol, on the first day of the year, for every election taking place during the year. The legislature cannot by in form legislating concerning rules of evidence, in fact overthrow constitutional

provisions. (*County Seat of Linn County*, 15 Kas. 500.) But where ample facilities for registering are furnished, and the opportunities for registering are continued down to within a reasonable time of the election-day, then it cannot be said that mere rules of evidence are abused. Neither is there any magic in the mere day of election. It seems to be conceded that proof can be required, provided only it is required on the day of election. But it is easy to conceive of many requirements in force only on the day of election, which would really be more burdensome, and more, in fact, like to additional qualifications, than anything contained in the statute in question. Suppose the law required every voter in the county to present himself on the day of election at the office of the county clerk, and obtain from him upon proper proofs a certificate of qualification; or suppose the law required him to remain in attendance at the polls from sunrise to sunset in order to give any one who desired an opportunity to challenge; or even supposing every voter was required to produce a dozen affidavits in writing from as many different persons, showing age and residence, such as are among the qualifications of an elector: all of these contemplate action on the day of election, and on that day alone; and they all bear upon the question of having the right to vote; and yet they would be clearly an abuse of rules of evidence. They would be more in the nature of additional qualifications than the simple matter of registry. It is true isolated instances may occur where a party through absence or sickness is unable to register, and so loses his vote, but the same result may follow where any failure to produce the required evidence occurs. A naturalized foreigner may lose his naturalization papers, and the court where he was naturalized may be at the very extreme of the land, and so, for the lack of the legal evidence of his naturalization, he may lose his vote; but still in both cases, the matter is simply one of a lack of evidence. It is a mistake to suppose that there is any special virtue in the mere day of election. If the legisla-

ture has the right to require proof of a man's qualification, it has a right to say when such proof shall be furnished, and before what tribunal; and unless this power is abused the courts may not interfere. It cannot be held that when the poll-books are open throughout the entire year, up to within ten days of the election, and in a public office in the city, there is any abuse as to either the time or manner of obtaining a list of legal voters. Several of the states have constitutional provisions concerning registration of voters, viz., Alabama, Arkansas, Colorado, Florida, Missouri, Nevada, North Carolina, Rhode Island, Virginia, and West Virginia. Some of these are worthy of notice. That of Missouri, (Const. 1875, art. 8, § 5,) provides that the general assembly *shall* provide by law for the registration of all voters in cities and counties having a population of more than one hundred thousand inhabitants, and *may* provide for such registration in cities having a population exceeding twenty-five thousand inhabitants and not exceeding one hundred thousand, but not otherwise. This very plainly recognizes the distinction between the necessity of registration in crowded settlements and that where the population is limited and scattered. That of West Virginia, (1872, art. 6, § 43,) prohibits the legislature from ever authorizing or establishing any board or court of registration of voters. Obviously the conviction was, that in the absence of such prohibition the power of the legislature in this respect was ample.

In conclusion, we think it may be affirmed that under the requirements of our constitution, it is the duty of the legislature to provide for a registration of voters; that it may provide that such registration be completed prior to the day of election, providing that ample facilities and time for registering are prescribed; and that it may also provide that one not registered shall not be allowed to vote. So far as the suggestion that the city clerk may refuse registering to a voter who is entitled thereto is concerned, it is enough to say that the courts are always open to correct any wrong of that

nature, whether done by the city clerk or the judges at election. We think the ruling of the district court was wrong. The judgment must be reversed, and the case remanded with instructions to overrule the motion to quash the information.

All the Justices concurring.