[No. 16157.    Department One.    October 30, 1920.]

THE STATE OF WASHINGTON, *on the Relation of H. W. Carroll, as Comptroller of the City of Seattle, Plaintiff*, v. THE SUPERIOR COURT FOR KING COUNTY, *Walter M. French, Judge, Respondent*.[1]

CONSTITUTIONAL LAW (24)—CONSTRUCTION—PRESUMPTIONS. An act of the legislature is presumptively valid and will be declared unconstitutional only when clearly in violation of the constitution.

ELECTIONS (2)—NATURE OF RIGHT—POWER TO REGULATE. The right to vote is a constitutional right, but the manner in which it is to be exercised is purely statutory, and the legislature may determine the proof required to establish the right to register and vote.

CONSTITUTIONAL LAW (102)—CLASS LEGISLATION—RIGHT TO VOTE—CITIZENSHIP—NATURALIZATION PAPERS. Rem. & Bal. Code, § 4767, as amended by Laws of 1919, p. 466, § 7, requiring a foreign born citizen to produce naturalization papers or a certified copy as a condition precedent to his right to register and vote, is not unconstitutional as class legislation, since there is a reasonable basis for the classification in the different character of proof for native born citizens.

ELECTIONS (16)—RIGHT TO VOTE—CITIZENSHIP—PROOF—NATURALIZATION PAPERS. The requirement of Rem. & Bal. Code, § 4767, as amended by Laws of 1919, p. 466, § 7, that a foreign born citizen produce naturalization papers or a certified copy, either of himself or his ancestor, as a condition precedent to his right to register and vote is not so difficult or impossible of attainment as in effect to amount

[1]Reported in 193 Pac. 236.

to a qualification additional to that required by the constitution; in view of the act of Congress of May 9, 1918, U. S. Comp. St. § 4352, par. 10, which permits a foreign born resident who had lived uninterruptedly within the United States for a period of five years, and erroneously exercised the rights of citizens in good faith, to become a citizen without making the preliminary declaration of intention required of other aliens.

Appeal from a judgment of the superior court for King county, French, J., entered October 8, 1920, directing the issuance of a writ of mandamus to compel the relator to register an applicant as a voter, after a hearing to the court. Reversed.

*Walter F. Meier* and *Charles T. Donworth,* for relator.

*R. B. Brown,* for respondent.

MAIN, J.—One W. J. Brown brought an action in mandamus in the superior court for the purpose of compelling the relator, H. W. Carroll, as comptroller of the city of Seattle, to register him as a voter in that city. The trial resulted in a judgment directing a writ to issue as prayed for; from this judgment, the cause is brought here for review.

W. J. Brown is a man sixty-one years of age. He was born in Scotland and came to the United States with his mother in the year 1863. His father had preceded them to this country the year before and had settled in the state of Pennsylvania. Since attaining his majority, Brown, in good faith, has continuously exercised the rights and performed the duties of a citizen of the United States. He claims that he has a right to vote because he believes the fact to be that his father had become a naturalized citizen. When he applied to be registered as a voter in the city of Seattle, the city comptroller declined to register him, because, being of foreign birth, he did not produce the

evidence of his citizenship which is required by § 4767 of Rem. & Bal. Code, as amended in ch. 163, § 7, p. 466, of the Laws of 1919. This statute requires that, when a person of foreign birth desires to register, he must exhibit to the registration officer the original or the duly certified copy of his naturalization papers, or, "if naturalized by virtue of the naturalization of his ancestor, then the original, or a duly certified copy, of the naturalization papers of such ancestor." On the hearing in the court below, Brown insisted that he had a right to register notwithstanding the provision of this statute, and that the statute is unconstitutional and void.

The question here for determination is whether the legislature, in making the requirements referred to, exceeded its powers. It is the settled law that courts will presume that an act regularly passed by the legislative body of the government is a valid law and will entertain no presumption against such validity, and when the constitutionality of an act of the legislature is brought in question, it is only when the act is clearly in violation of the constitution that the courts will so declare it. Section 1, of art. 6, of the constitution, as amended, provides, among other things, that "all persons of the age of twenty-one years or over, possessing the following qualifications, shall be entitled to vote at all elections: They shall be citizens of the United States . . ." Section 7 of the same article provides that "The legislature shall enact a registration law, and shall require a compliance with such law before any elector shall be allowed to vote." In 1919, in pursuance of the power conferred upon it by the constitution, the legislature, in the act above referred to, provided, as already stated, that a naturalized citizen of the United States, relying upon the fact of such citi-

zenship by reason of the naturalization of an ancestor, must, before he is entitled to register, produce either the original or a duly certified copy of the naturalization papers of such ancestor. Mr. Brown, when he applied to be registered, did not comply with this provision of the statute. The law further provides in § 8 that no person shall be entitled to vote at any election who is not registered according to the provisions of the act. The constitution, in § 1, of art. 6, as amended, specifies who are entitled to vote. In § 7 of the same chapter the legislature is directed to enact a registration law. Such a law is not for the purpose of adding to or modifying the qualifications of a voter as fixed by the constitution, but is for the purpose of making regulations and determining the proof which one shall present to establish the fact that he is a citizen and entitled to register and vote. The right to vote is a constitutional right, but the manner in which the franchise shall be exercised is purely statutory. In *State ex rel. Shepard v. Superior Court,* 60 Wash. 370, 111 Pac. 233, 140 Am. St. 925, it was said:

"The right to vote is a constitutional right, given by the people to certain citizens and withheld from others. But the manner in which the franchise shall be exercised is purely statutory. It is not within the power of the legislature to destroy the franchise, but it may control and regulate the ballot so long as the right is not destroyed or made so inconvenient that it is impossible to exercise it. It follows, then, that that which does not destroy or unnecessarily impair the right must be held to be within the constitutional power of the legislature."

The law requiring a foreign born citizen to produce naturalization papers or a certified copy thereof as a condition precedent to his right to register and vote deals with the question of proof and not with a question of the right to vote. *Capen v. Foster,* 12 Pick.

(Mass.) 485; *State v. Butts,* 31 Kan. 537, 2 Pac. 618. It is contended that the law is unconstitutional because it requires a different kind of evidence or proof of a naturalized citizen of his right to register and vote than that which is required of a natural born citizen. In other words, that, by this discrimination, the law is void as class legislation. It is only arbitrary and unreasonable classifications as to which there is no just difference or distinction, as between the class affected and others, that will render a law unconstitutional. *Allen v. Bellingham,* 95 Wash. 12, 163 Pac. 18. When the law is assailed as class legislation, the assailant must carry the burden of showing that it does not rest upon any reasonable basis but is essentially arbitrary. *Lindsley v. Natural Carbonic Gas Co.,* 220 U. S. 61, Ann. Cas. 1912 C 160. According to the fourteenth amendment of the constitution of the United States, there are two methods by which a person may become a citizen; (a) by birth in the United States, and (b) by naturalization therein. A natural born citizen's right to vote depends upon his place of birth, and this is the fact to be established. A naturalized citizen's right to vote depends, not upon his place of birth, but on a judgment or decree of a court of competent jurisdiction declaring either him or his ancestor a naturalized citizen. Evidence which would be reasonable and satisfactory in determining a natural born citizen's right to vote would not necessarily be such evidence when applied to a naturalized citizen. The legislature has a discretion in determining the character of proof that may be required to establish the fact of citizenship in each case. There is no reason why a law passed by the legislature which does not require the same character of proof as applied to each class should be held to be unconstitutional. There is a reasonable basis

for the classification, and a law which permits the right to vote on the part of a native born citizen to be determined by one character of proof and requiring different proof of a naturalized citizen does not make an arbitrary or unreasonable classification. Upon this branch of the case it is therefore concluded that the law is not void as class legislation.

The further question is whether the law adds a qualification not mentioned in the constitution. It is held by the authorities that a registration law cannot add new qualifications to those specified in the constitution, but the legislature may make and prescribe all reasonable regulations to determine whether a given person who proposes to vote possesses the required qualifications. In other words, the legislature may make regulations and specify the proof which is necessary as a condition precedent to the right to register and vote. *Byler v. Asher,* 47 Ill. 101; *Edmonds v. Banbury,* 28 Iowa 267; McCrary on Elections (4th ed.), p. 101. It is true that the requirements must not be so burdensome and the proof required so difficult or impossible of attainment as in effect to amount to a qualification additional to that required by the constitution. The question then is, whether the legislative act of 1919, *supra,* in requiring, as a condition precedent to a naturalized citizen's right to register and vote, that he shall produce the naturalization papers either of himself or his ancestor, in effect adds a qualification not mentioned in the constitution. It doubtless is a fact that, in many cases, the proof would be difficult of attainment. But the fact that it may be difficult to obtain the evidence necessary to establish the fact does not necessarily destroy the constitutionality of the law. In *State v. Butts, supra,* in an opinion written by Judge Brewer, who subsequently became a justice

of the supreme court of the United States, it was said, *arguendo:*

"Requiring a party to be registered is not in any true sense imposing an additional qualification, any more than requiring a voter to go to a specific place for the purpose of voting, or requiring him to prove by his own óath or the oaths of other parties his right to vote when challenged, or than requiring a naturalized foreigner to present his naturalization papers. Each and all of these are simply matters of proof, steps to be taken in order to ascertain who and who are not entitled to vote. Doubtless under the pretense of registration, and under the pretext of securing evidence of voters' qualifications, laws might be framed which would cast so much burden as really to be imposing additional qualifications.

"It is true isolated instances may occur where a party through absence or sickness is unable to register, and so loses his vote, but the same result may follow where any failure to produce the required èvidence occurs. A naturalized foreigner may lose his naturalization papers, and the court where he was naturalized may be at the very extreme of the land, and so, for the lack of the legal evidence of his naturalization, he may lose his vote; but still in both cases, the matter is simply one of a lack of evidence. It is a mistake to suppose that there is any special virtue in the mere day of election. If the legislature has the right to require proof of a man's qualification, it has a right to say when such proof shall be furnished, and before what tribunal; and unless this power is abused the courts may not interfere."

In *Capen v. Foster, supra,* it is recognized that, when inquiry is directed to the fact of citizenship, in certain cases it may require considerable research or investigation. In *Page v. Allen,* 58 Pa. St. 338, the question was essentially different from that presented for our determination at this time. There the constitution required a previous residence, when a citizen offered to

vote, of ten days in the district. The registration act required ten days' residence in order to be permitted to register, and proof to be made at least ten days before election. It was held that the statute imposed an additional qualification because it, in effect, required twenty days' residence in the district instead of ten as required by the constitution. It is argued that, if the act is sustained, the result will be to disfranchise a large number of naturalized citizens who cannot furnish the proof required by the statute, but this does not necessarily follow. In § 4352, par. 10, of the United States compiled statutes, as amended by the act of May 9, 1918, the Federal Congress provided:

"Any person not an alien enemy, who resided uninterruptedly within the United States during the period of five years next preceding July first, nineteen hundred and fourteen, and was on that date otherwise qualified to become a citizen of the United States, except that he had not made the declaration of intention required by law and who during or prior to that time, because of misinformation regarding his citizenship status erroneously exercised the rights and performed the duties of a citizen. of the United States in good faith, may file the petition for naturalization prescribed by law without making the preliminary declaration of intention required of other aliens, and upon satisfactory proof to the court that he has so acted may be admitted as a citizen of the United States upon complying in all respects with the other requirements of the naturalization law."

It will be noted that this statute provides that any person not an alien enemy, who has resided uninterruptedly in the United States during the five years next preceding July 1, 1914, and was on that date otherwise qualified to become a citizen of the United States, and because of misinformation regarding his citizenship status erroneously exercised the rights and performed

the duties of a citizen in good faith, may file a petition
for naturalization prescribed by the law without mak-
ing the preliminary declaration of intention required
of other aliens, and, upon satisfactory proof, may be
admitted as a citizen of the United States. Even if the
naturalization papers, or a copy thereof, cannot be pro-
duced, it is no great hardship upon a naturalized citizen
who has previously, in good faith, exercised the rights
and performed the duties of a citizen of the United
States to comply with that act, and thereby be able
to furnish the proof required by the registration act
of this state. Much has been said about the case of
the *Attorney General v. City of Detroit,* 78 Mich. 545,
44 N. W. 388, 18 Am. St. 458, 7 L. R. A. 99. In that
case a registration law was held void for a number of
reasons, one of which was that it required a naturalized
voter to produce a certificate of naturalization, or show
by evidence, other than his own oath, that such cer-
tificate was issued, while it permitted a native born
citizen to prove his standing as a citizen by his own
oath. While the question there is somewhat exten-
sively discussed, it does not seem to be carefully ana-
lyzed. The court held that the act made an unfair dis-
tinction between native born and naturalized citizens;
that it was unreasonable; added a qualification not
mentioned in the constitution, and was therefore void.
The court there seems to deal more largely with the
question of the policy of the law than we feel at liberty
to do. Whether the law is wise or unwise as a matter
of policy is solely a matter for the legislature. The
court's inquiry must be directed solely to the legal
questions and a determination of whether the act con-
flicts with any constitutional requirement. Notwith-
standing our respect for the court which rendered the
decision in that case, we decline to accept the reason-

ing of the opinion, and hold that the act of the legislature of this state in 1919, requiring that the naturalization papers or certified copy thereof be produced, is not so difficult to comply with as to impose upon a naturalized citizen an additional qualification to that specified in the constitution. The act of the Federal Congress, above referred to, was not before the court in that case. Were it not for this statute it may well be doubted whether the registration act of 1919 could be sustained.

The judgment of the superior court will be reversed, and the cause remanded with directions to that court to dismiss the proceeding.

HOLCOMB, C. J., TOLMAN, MITCHELL, and MOUNT, JJ., concur.