[No. 34335.   Department Two.   May 22, 1958.]

THE STATE OF WASHINGTON, *on the Relation of Esther M. Hubbard, Respondent,* v. ARTHUR LINDSAY *et al., Appellants.*[1]

[1]Reported in 326 P. (2d) 47.

*Selander, Espedal & Clark* and *Herbert H. Fuller*, for appellants.

*Breskin & Hilyer*, for respondent.

DONWORTH, J.—This action was commenced by respondent, in her capacity as a qualified elector and as representative of certain other such persons resident in part of King county fire protection district No. 2, for the purpose of obtaining a peremptory writ of mandate compelling appellants, as commissioners thereof, to pass a resolution providing for the merger of a portion of that district with King county fire protection district No. 23, a district adjacent to the area sought to be merged.

The statutory authority for such a merger, and the initial procedure therefor, is set forth in RCW 52.24.090 as follows:

"A part of one district may be transferred and merged with an adjacent district whenever such area can be better served by the merged district. To effect such a merger a petition shall be filed with the board of the merger district by the commissioners of the merging district, setting forth the exact area or part of the merging district to be transferred. The commissioners of the merging district *may* sign and file the petition upon their own initiative, and they *shall* file such a petition when it is signed by *fifteen percent of the qualified electors resident in the area to be merged.* The petition shall state the reasons for the merger; give a detailed statement of the district's finances, listing its assets and liabilities; state the terms and conditions under which the merger is proposed; and pray for the merger. Said petition shall then be acted upon as set forth in RCW 52.24.030 and 52.24.040." (Italics ours.)

(The district desiring to merge with another is designated as the "merging district" and the district into which the merger is to be made is called the "merger district." See, RCW 52.24.010.)

Pursuant to the provisions of RCW 52.24.090, a petition was circulated March 3, 1956, within the portion of district No. 2 proposed to be merged. The signatures of seven persons were obtained on the petition, and on March 5, 1956, it was filed in the office of the King county auditor in accordance with the provisions of RCW 52.24.030, which, in part, requires:

"If the petition is concurred in as presented or as modified, *the board of the merging district shall forthwith present the petition to the auditor* of the county in which the merg-

ing district is situated, *who shall within thirty days examine the signatures thereon and certify to the sufficiency or insufficiency thereof, and for that purpose he shall have access to all registration books and records in the possession of the registration officers of the election precincts included,* in whole or in part, within the merging district. Such books and records shall be *prima facie* evidence of the truth of the certificate. No signatures may be withdrawn from the petition after the filing." (Italics ours.)

After the petition was received, a deputy county auditor (who was also superintendent of elections and registrations for King county) caused a map to be prepared by the county engineer showing the boundaries of the merging area. At the time of trial, the deputy county auditor (having been called as a witness for respondent), on direct examination, was permitted to testify over appellants' continuing objection, as follows: .

"Q. Prior to making the certificate, . . . as to sufficiency, did you do more than check the registration roll? . . . A. At the time the petition was cleared by the county engineer I was quite curious as to where seven registered voters would constitute more than sixty per cent of the registered voters in a large area. After inquiry I found that most of the area was contained in the—the Port of Seattle was contained within the area. I went out to the area involved; and there was a restaurant and I think there were six or eight cabins behind the restaurant where there were people living. I checked with the restaurant owner, and he informed me that it was mostly his family living back there. And I think four of those were registered voters. The other three [persons whose names appeared on the petition] hadn't previously registered from that address, which I believe was 18279 Pacific Highway South. Those three people had lived there but they were never registered."

On redirect examination, this witness testified, in part:

"Q. . . . you satisfied yourself prior to making the certificate of sufficiency that at least from your point of view as superintendent of elections, under your duties in such official capacity requiring you to make a certificate of sufficiency, that [counsel names nine persons whose names appeared on the registration books for the precincts involved, but who had not signed the petition] were not qualified electors? A. I have a list here—I might explain it in

this manner—a list which I worked from which contains most of those names. And I checked with Mr.............. one of the Jabers who owns the restaurant and also owns these cabins, and he assured me that these people had once lived there but had moved away, that they were not living there at the present time."

A later comparison of the names appearing on the petition with those contained in the registration books (for the two precincts located within the merging area) revealed that only four of the seven petitioners were registered voters. On cross-examination, the deputy county auditor testified that the registration books further disclosed the names of nine other persons (referred to in his testimony above quoted) who were registered to vote within the merging area, but who had not signed the petition.

The investigation mentioned in the above quoted testimony was made by the deputy county auditor by interviewing Mr. Jaber at his place of business in the area proposed to be merged about one week prior to April 18, 1956, at which time he executed the following certificate:

"THIS IS TO CERTIFY, that, *the Petition* for the merger of a portion of King County Fire Protection District No. 2 with King County Fire Protection District No. 23, in a portion of Airport and Marie Precincts, *has been examined, and the signatures thereon carefully compared with the registration records of this office and, as a result of such examination,* the said Petition is found to contain more than 60% of all of the qualified electors of King County Fire Protection District No. 2 praying for merger with King County Fire Protection District No. 23 and is found to be sufficient under the provisions of R.C.W. 52.24.100." (Italics ours.)

(The trial court commented on the language of the certificate, which states that the petition was signed by more than sixty per cent of the qualified electors "praying for merger"—it was obviously one hundred per cent—but held that it was sufficient to raise the question of compliance with RCW 52.24.100, relating to obviating the necessity of an election.)

RCW 52.24.100 provides:

"If *three-fifths of all the qualified electors in the area to*

*be merged* sign a petition to merge the districts, no election on the question of the merger is necessary, in which case the auditor shall return the petition, together with his certificate of sufficiency attached thereto, to the boards of the merging districts. Thereupon the boards of the respective districts shall adopt their concurrent resolutions of transfer in the same manner and to the same effect as if the same had been authorized by an election." (Italics ours.)

On May 9, 1956, the commissioners of district No. 23 approved a joint resolution authorizing the merger and delivered the same to one of the commissioners of district No. 2 for appropriate action. The commissioners of district No. 2 failed to approve and adopt the concurrent resolution of transfer as provided in RCW 52.24.100.

The failure of the commissioners of district No. 2 to act upon the certified petition prompted respondent to commence this action in order to compel them to do so.

Upon trial, appellants elected to stand upon their challenge to the sufficiency of respondent's evidence. Thereupon the trial court, although stating that it entertained serious doubt on the legal issues, rendered an oral opinion in favor of respondent. A judgment and writ of mandamus was entered accordingly.

Appellants have appealed, and make eight assignments of error. These challenge two findings of fact and three conclusions of law entered by the trial court in conformance with its oral decision. But the sole underlying legal issue presented is whether the uncontroverted facts are sufficient, according to law, to entitle respondent to compel appellants to adopt a resolution making the proposed merger effective (under the provisions of RCW 52.24.100) without first holding an election.

Appellants argue that the deputy auditor "had no right to go outside of his own official records to determine who was eligible to sign the petition." Conversely, respondent contends that RCW 52.24.100 places the duty squarely upon the county auditor to determine "whether three-fifths of all *qualified electors* in the area to be merged have signed the petition," and whether such petitioners are, in fact, residents within the area to be merged (RCW 52.24.090). Respondent

further contends that the sentence, "Such books and records shall be *prima facie* evidence of the truth of the certificate," contained in RCW 52.24.030, contemplates that the county auditor is not limited to the registration books and records.

We think that a proper interpretation of the term "qualified electors" as used in RCW 52.24.090, 52.24.100, and in RCW 52.24.040 (to which RCW 52.24.090 refers) is determinative of the issue here presented.

■ Art. VI, § 1, of the state constitution, as amended by amendment 5, prescribes the qualifications of electors. In *Tennent v. Stacy,* 48 Wn. (2d) 104, 291 P. (2d) 647 (1955), we were not concerned with the right of a qualified elector to vote, but our inquiry was limited solely to whether registration to vote was a prerequisite to the right of a "qualified elector" to hold an elective public office within the meaning of the Laws of 1919, chapter 139, § 1, p. 390 (RCW 42.04.020). We there said:

"The constitution does not make registration a condition precedent to being an elector, which is the test of eligibility to hold office. *To be a qualified voter, one must necessarily be a qualified elector, but the converse is not true.*" (Italics ours.)

■ In the present case, we are concerned not only with the qualifications of a qualified elector but more particularly with the method prescribed by the legislature for publicly establishing the fact that a certain citizen possesses those qualifications. For purposes of voting, and also signing a petition for merger, a citizen must not only possess the qualifications of an elector specified in Art. VI, § 1, of the constitution, but he must also have that fact recorded in the public records by registering to vote in compliance with RCW 29.07.010 *et seq.* The latter act was passed by the people as an initiative measure and is referred to below. The provisions of Art. VI, § 7, of the constitution contemplate the enactment of a registration law requiring compliance therewith "before any elector shall be allowed to vote."

The difference between a citizen who has the qualifications of an elector but has not registered in compliance with RCW 29.07.010, and a citizen who has the qualifications

and also has registered, is, for all practical purposes, the difference between a franchised citizen and a disenfranchised citizen.

This distinction was clearly pointed out by this court in *State ex rel. Carroll v. Superior Court,* 113 Wash. 54, 193 Pac. 226 (1920), where it was said:

"The constitution, in § 1, of art. 6, as amended, specifies who are entitled to vote. In § 7 of the same chapter the legislature is directed to enact a registration law. Such a law is not for the purpose of adding to or modifying the qualifications of a voter as fixed by the constitution, but is for the purpose of making regulations and determining the proof which one shall present to establish the fact that he is a citizen and entitled to register and vote. The right to vote is a constitutional right, but the manner in which the franchise shall be exercised is purely statutory. In *State ex rel. Shepard v. Superior Court,* 60 Wash. 370, 111 Pac. 233, 140 Am. St. 925, it was said:

" 'The right to vote is a constitutional right, given by the people to certain citizens and withheld from others. But the manner in which the franchise shall be exercised is purely statutory. It is not within the power of the legislature to destroy the franchise, but it may control and regulate the ballot so long as the right is not destroyed or made so inconvenient that it is impossible to exercise it. It follows, then, that that which does not destroy or unnecessarily impair the right must be held to be within the constitutional power of the legislature.'

"The law requiring a foreign born citizen to produce naturalization papers or a certified copy thereof as a condition precedent to his right to register and vote deals with the question of proof and not with a question of the right to vote."

As stated above, the people, at the general election in 1932, adopted an initiative measure, designated as Laws of 1933, chapter 1, p. 3, providing for permanent registration of voters. In this act, the duties of the several county auditors, with respect to precincts lying outside of incorporated cities and towns concerning voters and elections, are detailed.

We must presume that the legislature had this initiative measure in mind when, a few months later, it enacted Laws

of 1933, Ex. Ses., chapter 60, p. 167 (effective April 12, 1934), initially authorizing the organization of fire protection districts in class "A" and first-class counties, and providing, *inter alia*, that:

" . . . The county auditor shall, within ten days from the date of filing such petition examine the signatures and certify to the sufficiency or insufficiency thereof; and for such purpose shall have access to all registration books or records in the possession of the registration officers of the election precincts included, in whole or in part, within the boundaries of the proposed district. No person having signed such a petition shall be allowed to withdraw his name therefrom after the filing of the same with the county auditor. . . ."

(*Cf.* italicized language of RCW 52.24.030, above quoted.)

Although the 1933 act relating to fire protection districts was repealed by Laws of 1939, chapter 34, p. 94, the duties of the county auditor with respect to certifying the sufficiency or insufficiency of the petition, and the means provided therefor, were re-enacted in the 1939 act in substantially the same language, and again in Laws of 1947, chapter 254, p. 1049 (RCW 52.04.030), with the two exceptions that the county auditor is allowed thirty days (instead of ten) from the date such petition is filed in which to examine the signatures thereon and certify as to the sufficiency thereof. The last two acts (1939 and 1947) contain the sentence, "Such books and records shall be *prima facie* evidence of the truth of the certificate."

Also significant is the fact that, in each act since fire protection districts were first authorized in 1933, the legislature has provided for the formation of such districts pursuant to petition signed by "qualified registered electors." (See Laws of 1933, Ex. Ses., chapter 60, p. 167; Laws of 1939, chapter 34, p. 94; Laws of 1941, chapter 70, p. 173; Laws of 1947, chapter 254, p. 1049.)

A consideration of RCW 52.24.090 and 52.24.100 (Laws of 1953, chapter 176, p. 378, §§ 5 and 6, respectively), together with other portions of the act referred to therein, specifically RCW 52.24.030 and 52.24.040 (Laws of 1947, chapter 254, p. 1049, §§ 14 and 15), compels the conclusion

that the words "qualified electors" were intended to mean "qualified registered electors." Otherwise, persons who possessed the constitutional qualifications of · electors but who had not proven those qualifications by registering to vote, could compel the ·merger of a fire protection district, or a portion thereof, with an adjacent district, although they could not initiate organization of a fire protection district because they were not "qualified registered electors." Furthermore, respondent's contention as to the meaning of the term "qualified electors" would result in the anomalous situation of permitting constitutionally qualified, but unregistered, voters to sign a petition which would obviate the necessity for holding a merger election at which they would be ineligible to vote if such election were required.

■ When the meaning "qualified registered electors" is applied to these statutes, the duties of the county auditor become clear. They are: To examine the signatures on the petition for merger and determine from the registration records of the precinct, or precincts, involved (1) whether the several petitioners are registered to vote, and (2) to determine whether the address of each such registered voter, as it appears on the registration records, is a residence within the merging area.

■ The only purpose of the statute (RCW 52.24.090) in requiring signers of the petition to be "resident in the area to be merged" is to limit signers to those registered voters shown by the registration records to be affected by the proposed merger. This phrase simply distinguishes registered voters within the area affected by the merger from others not resident therein.

■ Respondent argues that the sentence, "Such books and records shall be *prima facie* evidence of the truth of the certificate," ·by implication authorizes the county auditor to go beyond the registration records and make an independent investigation in the area in order to determine the sufficiency of the petition. We cannot indulge in any such presumption, because to do so is to infer that the legislature intended to substitute chaos in the place of order. The leg-

islature has prescribed the method by which the county auditor is to determine the sufficiency of the petition, namely, by reference to the precinct registration records.

It has not authorized the county auditor to contradict those records by personally visiting the merging area to ascertain—by conversation with the inhabitants thereof—whether the voters named in the registration records had moved away or died before or after the filing of the petition. The fallacy of respondent's argument is best demonstrated by the facts of the present case. Here, in order to satisfy his curiosity, the deputy county auditor made an investigation in the area. As a result of his conversation with one of the four registered petitioners, nine citizens who were registered voters at the time the petition was filed were disregarded by him in determining the sufficiency of the petition, although their right to vote at an election within the precincts involved had never been challenged.

■ RCW 52.24.030 provides, *inter alia*, that: "No signatures may be withdrawn from the petition after the filing." It must follow from this that the sufficiency of a petition for merger is to be determined as of the date of filing from the applicable registration records as they stood on that date. It is immaterial whether the deputy county auditor had been advised by inhabitants of the merging area that certain registered voters had died, or moved away, either before or after the filing of the petition, so long as their names appeared on the registration records.

■ In the present case, the registration records revealed the names of thirteen registered electors whose addresses, as shown on the registration records, were within the area to be merged. Since the petition contained the names of only four registered electors, the petition was insufficient to obviate the necessity of an election under RCW 52.24.100. Respondent was not, therefore, entitled to the relief demanded in her complaint and awarded her by the trial court.

The judgment is reversed, and the cause is remanded with instructions to dismiss the action.

HILL, C. J., MALLERY, WEAVER, and ROSELLINI, JJ., concur.