T. W. W. DAVIES, Respondent, v. LEMUEL C. McKEEBY, Appellant.

RIGHT TO VOTE—REGISTRY-LAW OATH UNCONSTITUTIONAL. The registry law (Stats. 1864-5, 382) provided that no person should be entitled to have his name registered—and consequently to vote—until he had taken an oath that he had not, after arriving at eighteen years of age, been voluntarily engaged in rebellion against the government; while the Constitution (Art. II, Sec. 1) provides that no such person should be allowed to vote unless an amnesty be granted: *Held*, on an application for registry by one who could not take the prescribed oath, but was entitled under the Constitution to the right of suffrage, that the oath required by the registry law was unconstitutional, and that as the registry agents could not alter or modify it so as to leave out the objectionable part, the entire oath must fall.

CONSTRUCTION OF STATUTES—UNCONSTITUTIONALITY. The form of a law by which a person is deprived of a constitutional right is immaterial; it is a nullity, whatever be its form.

STATUTES TAKING AWAY CONSTITUTIONAL RIGHTS IN EFFECT. A statute which makes the enjoyment of a constitutional right depend upon an impossible condition or upon the doing of that which cannot legally be done, is equivalent to an absolute denial of the right under any condition: the effect, and not the language of the statute in such case, must determine its constitutionality.

POWER OF PRESIDENT OF UNITED STATES TO PROCLAIM AMNESTY. The Constitutional power of the President of the United States to pardon includes the right to proclaim an amnesty.

AMNESTY, WHAT. Amnesty is a general pardon granted to a class of persons by law or proclamation; and the act of amnesty in such case is as properly a pardon as if simply granted to an individual by deed.

REGISTRY OF PERSONS ENTITLED TO VOTE—MANDAMUS. The Registry Agent appointed under the registry law (Stats. 1864-5, 382) may be compelled by mandamus to register the names of all persons applying and entitled under the Constitution to vote.

APPEAL from the District Court of the Second Judicial District, Ormsby County.

The facts are stated in the opinion.

*R. M. Clarke*, for Appellant.

*A. C. Ellis*, for Respondent.

[No brief of either counsel on file.]

By the Court, LEWIS, C. J.:

The Constitution of this State (Art. II, Sec. 1) provides that: "Every white male citizen of the United States, (not laboring under the disabilities named in this Constitution) of the age of twenty-one years and upwards, who shall have actually, and not constructively, resided in the State six months and in the district or county thirty days next preceding any election, shall be entitled to vote for all officers that now are or may hereafter be elected by the people, and upon all questions submitted to the electors at such election: *provided*, that no person who has been, or may be convicted of treason or felony in any State or Territory of the United States, unless restored to civil rights, *and no person who, after arriving at the age of eighteen years, shall have voluntarily borne arms against the United States, or held civil or military office under the so-called Confederate States or either of them, unless an amnesty be granted to such by the Federal Government;* and no idiot or insane person, shall be entitled to the privilege of an elector."

It will be observed from this language that there are three classes of persons who, although they may have borne arms against the government, are still entitled to all the privileges of an elector. These are: First, all those who so bore arms before they were eighteen years of age, and not afterwards; second, all persons who did so by compulsion; and, third, all those to whom an amnesty is granted by the Federal Government. The section above quoted may therefore be construed as if it read in this manner: Every

white male citizen of the United States, including all persons who, prior to the age of eighteen years, and not afterwards, voluntarily bore arms against the government of the United States; all persons, regardless of age, who did so by compulsion; and also all persons to whom an amnesty is granted by the Federal Government, shall be entitled to vote.   Hence, these three classes of persons (so far as the right of suffrage is concerned) stand in precisely the same position as if they had never been engaged in rebellion against the United States.   Upon this point the language of the Constitution is too clear to admit of a difference of opinion.   The right of suffrage is as unqualifiedly given to these three classes as it is to any person, for they are expressly exempted from the general provision disqualifying those who bore arms against the government.   But the registry law of this State (Stats. 1864–5, 382) deprives those who, after arriving at the age of eighteen years, voluntarily bore arms against the United States, of the elective franchise, notwithstanding an amnesty may have been granted to them; for no person is permitted to have his name registered (and consequently not allowed to vote) until he has taken an oath to the effect that he has not, after arriving at the age of eighteen years, voluntarily been engaged in rebellion against the government. That class of persons who voluntarily bore arms, and to whom an amnesty has been granted, certainly cannot take that oath, because they cannot swear without qualification that they have not, after arriving at the age of eighteen years, voluntarily borne arms against the United States; and unless they do so take it, they cannot vote. The requirement, therefore, that it shall be taken by all persons without exception, is equivalent to a direct enactment that that class of persons shall be deprived of the right of suffrage which is conferred upon them by the Constitution.

The form of the law by which an individual is deprived of a constitutional right is immaterial.   The test of its constitutionality is, whether it operates to deprive any person of a right guaranteed or given to him by the Constitution.   If it does, it is a nullity—whatever may be its form.   Surely, a law which deprives a person of a right by requiring him to take an oath which he cannot take is no less objectionable than one depriving him of such right in

Davies v. McKeeby.

direct terms. To make the enjoyment of a right depend upon an impossible condition, or upon the doing of that which cannot legally be done, is equivalent to an absolute denial of the right under any condition. The effect, and not the language of the law in such case, must determine its constitutionality. It would not be doubted for a moment, that a law expressly denying the elective franchise to any person upon whom the Constitution confers it, would be unconstitutional. Why, then, is a law less objectionable which, although not expressly and directly, yet no less certainly, denies the right? No law can be framed which will more effectively deprive that class of persons who, after arriving at the age of eighteen years, voluntarily bore arms against the United States, and to whom an amnesty has been granted, of the right of suffrage, than the oath required by the registry law. Why, then, is it not as much in conflict with the Constitution, and as obnoxious to it, as a law which in direct terms deprived that class of the elective franchise? In our judgment it is—and being so in conflict with the fundamental law, the oath is a nullity.

But it is argued, no amnesty has been granted—and hence, no person, who by the Constitution is entitled to the elective franchise, is deprived of it by means of the oath required by the law. This, however, appears to us to be an error. On the fourth day of July, 1868, a proclamation, the conclusion of which is in this language, was issued by the President:

"Now, therefore, be it known that I, Andrew Johnson, President of the United States, do, by virtue of the Constitution, and in the name of the people of the United States, hereby proclaim and declare, unconditionally and without reservation, to all and every person who, directly or indirectly, participated in the late insurrection or rebellion—excepting such person or persons as may be under presentment or indictment in any Court of the United States having competent jurisdiction, upon a charge of treason, or other felony—a full pardon and amnesty for the offense of treason against the United States, or of adhering to their enemies during the late civil war—with restoration of all rights of property, except as to slaves, and except also, as to any property of which any person may have been legally divested under the laws of the United States."

The relator shows by his affidavit that he is possessed of all the electoral qualifications required by the Constitution; but that, by reason of his having participated in the late rebellion, he cannot take the oath required by the registry law. He also avers that he has not, at any time, been under presentment or indictment in any Court of the United States, upon any charge of treason or other felony—thus bringing himself fully within the terms of the proclamation above quoted.

It is, however, claimed that the President had not the power to grant amnesty as was done by this proclamation; that amnesty can only be granted by an Act of Congress. To sustain this position it is argued that the constitutional power to pardon, which is given to the Chief Magistrate, does not include the right to proclaim amnesty. But the word "pardon" is generic, and includes every character of pardon. Amnesty is a general pardon granted to a class of persons by law or proclamation. The Act in such case is as properly a pardon as if simply granted to an individual, by deed. Indeed, it seems to be generally conceded, in the United States, that the word "pardon" includes amnesty. Thus, Mr. Webster defines the latter word to be, "an act of oblivion; a general pardon of the offenses of subjects against the government, or the proclamation of such pardon." So, Worcester defines it as "a general pardon, granted to those guilty of some crime or offense."

Amnesty, being a kind of pardon, must be held to be included in the constitutional power conferred upon the President to grant pardons—hence, this proclamation must be accepted as a valid and operative grant of amnesty to all those who may be included within its language.

Here, then, it appears that the relator, who has shown himself possessed of all the qualifications required by the Constitution to entitle him to the elective franchise, is deprived of that right by means of the oath required by the Registry law. This being the case, the oath is unconstitutional, and the relator cannot be compelled to take it.

No part of the oath, it is true, appears to be in conflict with the Constitution, except that which requires the citizen to swear that he has not, since arriving at the age of eighteen years, voluntarily

borne arms against the United States, nor held any civil or military office under the Confederate States. Still, as the registry agents have no right or power to alter or modify the oath, but are compelled to administer it entire, and to all persons who make application to have their names placed on the Register—a part of it being open to constitutional objection, the entire oath must fall.

The mandamus to the defendant, commanding him to register the name of the relator, was properly issued by the Judge below, and his order must be affirmed.

By JOHNSON, J.: I dissent.