Morris *et al. v.* Powell.

---

No. 15,600.

MORRIS ET AL. *v.* POWELL.

ELECTIONS.—*Constitutional Qualification of Voters.*—*May not be Added to by Legislative Enactment.*—The qualification of voters, as defined by the Constitution, can not be added to or changed by legislative enactment.

SAME.—*Registration of Voters.*—*Property Qualification.*—*Section 13 of Act of 1889.*—*Unconstitutionality of.*—The part of section 13 of the act of 1889 (Acts 1889, p. 162), which provides that a person absent from the State for a period of six months or more on business of the State or of the United States, shall, at the time he offers to vote, produce a certificate from the county auditor that his name has been continuously, since his departure from the State, upon the tax duplicate for the purpose of taxation during his absence, and that he is still a taxpayer, is unconstitutional and void, since, in addition to the qualifications to vote as required by section 2 of article 2 of the Constitution, it adds in effect a property qualification.

SAME.—*Registration.*—*Requirement of Ninety Days' Residence in Precinct.*—*Unconstitutionality of.*—The part of said section, which provides that residents of the State who absent themselves from the State for a period of six months or more, and persons who have not resided in one county for six months before any election, shall register and produce a certificate of such registration ninety days before the election to entitle them to vote, is in conflict with the Constitution, and void, because by requiring such voters to declare their intention to become qualified voters, and to designate their voting precinct ninety days before the election, the qualification of a residence of ninety days in the precinct is added to the constitutional qualification of a residence of thirty days therein.

MITCHELL, J., dissents from the holding that the provision which requires persons who have absented themselves from the State for a period of six months or more to present the required certificate of their intention, is invalid.

SAME.—*Registration Law.*—*Must be Impartial.*—Where the Constitution commands how a right may be exercised, it must be exercised, if at all, as commanded by the Constitution. Section 14 of article 2 of the Constitution, which provides that the " General Assembly shall provide for the registration of all persons entitled to vote," is an implied prohibition against providing for the registration of any class, or for only a part of the voters. One class of voters can not be required to possess qualifications which are not required of all others. Hence, the part of said section 13 which requires the registration of persons absenting themselves from the State for six months or more, and persons who have not resided in any one county for six months before any elec-

tion, is void, for the reason that it imposes extra burdens and hardships on the persons named, and in that respect is unreasonable and not impartial. The unconstitutionality of the provisions named renders the entire section void.

MITCHELL, J., dissents.

From the Henry Circuit Court.

*C. S. Hernly,* for appellants.

*M. E. Forkner* and *A. C. Harris,* for appellee.

OLDS, J.—This action was brought by Simon T. Powell against Joshua I. Morris, auditor of Henry county, and William H. Elliott, to enjoin the payment of an account for books furnished the county for registering votes under section 13 of the election law of 1889 (Acts of 1889, p. 162 ; Elliott's Supp., section 1335), and it involves the validity of said section.

A demurrer was filed by the appellants to the complaint, and overruled, and he refusing to plead further, judgment was rendered on demurrer in favor of appellee.

The section of the law reads as follows :

"Section 13. Each elector shall vote, by ballot, in the precinct wherein he resides. Any person, who, having been a resident of Indiana, shall have absented himself from the State for a period of six months or more, or who shall have gone into any other State or sovereignty with the intention of voting therein, or during any absence in another State or sovereignty shall have voted therein, and, also, any person who shall not have been a *bona fide* resident of this State and of the county in which he resides, at least six months before any election, shall, before being entitled to vote at any election in this State, register a notice of his intention to become a qualified elector therein, in the office of the clerk of the circuit court of the county in which he resides. Whoever shall be absent from the State for a period of six months or more on business of the State or of the United States, shall, at the time he offers to vote, produce a certificate from

Morris *et al. v.* Powell.

the county auditor that his name has continuously, since his departure from the State on such business, been upon the tax duplicate of said county for the purpose of taxation, during his absence from the State, and that he is still a taxpayer in said county; and failing to produce such certificate such person shall not be permitted to vote. Such registration shall be made at least three months prior to any such election, and the notice shall state such person's name, age and place of residence (by which shall be understood his lodging place), and the notice shall be in the form following, and sworn to before such clerk:

"STATE OF INDIANA, $\Big\}$ ss:
—— COUNTY,

"I, —— ——, the subscriber hereto, hereby declare my intention to become a qualified elector under the laws of Indiana; that I was —— years of age on my last birthday; that my lodging place is now —— —— —— (here insert exact location); and I am a *bona fide* resident of the precinct in which I lodge: *Provided,* That the provisions of this section respecting such registration and notice shall not apply to any voter who, six months or more previous to any election, shall have registered with said clerk a notice declaring his intention to hold his residence in this State during a contemplated absence, and that during such absence he will not exercise the right of suffrage elsewhere, and which notice shall be as follows, and shall be sworn to before said clerk:

"STATE OF INDIANA, $\Big\}$ ss:
—— COUNTY,

"I, —— ——, the subscriber hereto, a qualified voter of —— —— (here insert the name of his precinct, ward, township, town and city), in said county, intending to absent myself, do hereby declare my purpose to hold my residence as a voter in said State, and that I will not exercise the right of suffrage elsewhere during my absence.

"—— ——.

"On the filing of any notice, as provided for in this sec-

tion, it shall be the duty of such clerk to enter the name and residence of said elector and date of the filing of said notice in a book furnished for said purpose, to be open at all times to the inspection of the public, and safely preserve said · original notice and deliver a certified copy of the same to the elector so registering, and on demand of any challenger or member of the election board such elector shall be requested to produce the same before being allowed to vote. No person shall register for any other person, or in the name of any other person, or present the copy of the register for any other person at a polling place, or induce, hire or advise any other person not to register who may be required to register as above. Any person violating the provisions of this section, or who shall vote, or attempt to vote, without having been registered, when required to do so as above, shall be guilty of a felony, and, upon conviction, shall be imprisoned in the State prison for not less than one nor more than five years, and be disfranchised for any determinate period. No elector shall be at any cost or charge for such registration or certificate thereof; and the clerk shall be allowed twenty-five cents, and no more, for each registration and certificate thereof, to be in full for all services connected therewith, which allowance shall be made out of the county treasury by the board of county commissioners, on itemized statements sworn to by said clerk."

Article 2, section 1, of the Constitution of this State declares that "All elections shall be free and equal," and section 2 of the same article defines, in unambiguous language, who shall be entitled to vote.

Section 2. " In all elections not otherwise provided for by this Constitution, every male citizen of the United States, of the age of twenty-one years and upward, who shall have resided in the State during the six months, and in the township sixty days, and in the ward or precinct thirty days, immediately preceding such election, and every male of foreign birth, of the age of twenty-one years and upwards, who shall

Morris *et al. v.* Powell.

have resided in the United States one year, and shall have resided in this State during the six months, and in the township sixty days, and in the ward or precinct thirty days, immediately preceding such election, and shall have declared his intention to become a citizen of the United States, conformably to the laws of the United States on the subject of naturalization, shall be entitled to vote in the township or precinct where he may reside, if he shall have been duly registered according to law."

Section 4, of the same article, provides that " No person shall be deemed to have lost his residence in the State by reason of his absence, either on business of this State or of the United States."

Under the Constitution a person must have certain qualifications to entitle him to vote, viz. :   He must be a male citizen of the United States or if of foreign birth, must have declared his intention to become a citizen of the United States, conformably to the laws of the United States on the subject of naturalization, and have resided in the United States one year.   He must be twenty-one years of age, and have resided in this State six months, and in the township sixty days, and in the precinct thirty days, and he must be duly registered according to law providing for the registration of voters.   If a person possess all of these qualifications he is entitled to vote, but if there be any one of these qualifications which he does not possess then he is not entitled to vote, except if there be no legally enacted statute providing for the registration of voters, then he is exempted from the duty of registering, or rather the voters of the State can not be disfranchised by reason of the failure of the Legislature to comply with the constitutional mandate. In 1881 the electors of the State by a majority vote of over eighty-seven thousand, amended section 14 of article 2 of the Constitution so as to provide that the " General Assembly * * shall provide for the registration of all voters entitled to vote," and it is by reason of an omission or a refusal on the

part of the General Assembly to obey and comply with this constitutional mandate that the voters of the State have exercised the right of suffrage without registration since the adoption of this amendment. That the General Assembly has the power to enact a law providing for a uniform system of, registration of all voters, we think, can not be controverted, and that it is made the duty of the General Assembly by the Constition to enact a law providing a reasonable, uniform and impartial system for the registration of all voters must be conceded, but section 13 of the present law imposes certain duties upon certain classes of voters, and requires certain qualifications of another class, while a much larger portion is not included within its provisions or affected thereby. The question is presented as to whether or not the Legislature can impose the obligations which it seeks to do by this section on the class of voters therein specified, and to another class add a qualification not required by the Constitution to entitle them to vote.

This section attempts to impose an obligation upon all persons who, being residents of the State of Indiana, shall absent themselves from the State for a period of six months or more, or who shall have gone into any other State or sovereignty with the intention of voting therein, or who, during an absence in another State or sovereignty, have voted therein, and upon all persons who shall not have been *bona fide* residents of this State and of the county in which they reside at least six months before any election, the duty of registering a notice of their intention to become qualified electors in their respective precincts in the office of the clerk of the circuit court of the county in which they reside at least three months prior to any such election, and makes it a felony, punishable by imprisonment in the State prison, to vote, or attempt to vote, without having been so registered.

It is also attempted by this section to make the right to vote of certain electors of this State, who shall be absent from this State for a period of six months or more on busi-

ness of the State or of the United States, to depend upon their producing at the time they offer to vote a certificate of the county auditor that their names have continuously since their departure from the State been upon the tax duplicate of said county for the purpose of taxation during their absence from the State, and that they are still taxpayers in said county.

This latter clause seeks to add, in addition to the qualification required by the Constitution, a property qualification to a certain class of voters, for it provides that persons being absent from the State on the business of the State or United States, shall be taxpayers in the county in which they reside, and that they shall keep their names on the tax duplicate during their absence, and shall furnish a certificate of the auditor to that effect before they shall have a right to vote. None of the names of voters except able-bodied men, between the ages of twenty-one and fifty years, and persons owning taxable property in the county, properly appear upon the tax duplicate, and are not taxpayers in the county. So that a voter over fifty years of age, being absent on business of the State or United states, and owning no taxable property in the county, is not a taxpayer in the county, and he could not procure such a certificate from the county auditor, and on voting, or attempting to vote, he would by this section be guilty of a felony.

The only reasonable construction to be placed upon this part of the section is, that in addition to the qualifications to vote, as required by the Constitution, it adds another, a property qualification, that he shall own taxable property within the county where he resides, and shall keep his name upon the tax duplicate. The Legislature has no such power. That when the people by the adoption of the Constitution have fixed and defined in the Constitution itself what qualifications a voter shall possess to entitle him to vote, the Legislature can not add an additional qualification is too plain and well recognized for argument, or to need

the citation of authorities. The principle is elementary that when the Constitution defines the qualification of voters, that qualification can not be added to or changed by legislative enactment. That our Constitution does define the qualification of voters, and that the part of section 13, *supra,* providing that certain persons shall make proof of the fact that they are taxpayers of the county, is an attempt to add an additional qualification, will admit of no doubt, and it is, therefore, unconstitutional and void. This is in accordance with the holding of this court in *Quinn* v. *State,* 35 Ind. 485. The court, in that case, says : " In *Rison* v. *Farr,* 24 Ark. 161, the court held, that when the Constitution, as in that State, fixes the qualifications of, and determines who shall be deemed qualified voters, these qualifications can not be added to by the Legislature." In the case of *Quinn* v. *State, supra,* it was held that a law providing for a residence of ninety days in the township was in conflict with the Constitution of this State then in force, which did not require a residence for any definite length of time in the township. *St. Joseph, etc., R. R. Co.* v. *Buchanan County Court,* 39 Mo. 485; *People* v. *Canaday,* 73 N. C. 198; *Page* v. *Allen,* 58 Pa. St. 338 (98 Am. Dec. 272); *State* v. *Williams,* 5 Wis. 308; *Kineen* v. *Wells,* 144 Mass. 497 (59 Am. Rep. 105).

That portion of the section providing for certain persons to register before being entitled to vote was evidently intended, and we think it must be regarded as an attempt to create a system of registration whereby persons coming within its provisions shall be required to register before being entitled to vote. It is true, it can hardly be said that it creates a court, or board, with authority to determine who are legal voters, and have the right to vote, and enter their names upon a register as legal voters. Yet it does provide for a mode of registering, and keeping a record of certain classes of voters, and requires such voters to produce a certificate of such registration before being entitled to vote, and it may be properly regarded as attempting to create a system

for the registration of certain classes of voters.   It is designated in the section as a " registration." Courts differ as to the effect of a law requiring the registration of voters in States wherein the constitution defines the qualifications of voters, and is silent upon the question of registration ; some courts holding registration to be a mere regulation as to the mode of exercising the right of suffrage, while other courts, and, we think, the better reasoned opinions, hold it to be adding a qualification ; but whatever may be the true rule where the Constitution is silent, we think there can be no doubt that under the Constitution of this State, registration under a proper law constitutes a qualification.   When the Legislature of this State enacts a law providing for a reasonable, uniform, and impartial registration of all voters in this State, then registration will constitute a qualification which the voter must possess to entitle him to vote, the same as any of the other qualifications defined by the Constitution.  When such a registration law is enacted the voter then must possess the qualifications of being a male citizen of the United States, twenty-one years of age, or over, and must have resided in the State six months, in the township sixty days, in the ward or precinct thirty days, and must be duly registered according to law.   If he possess all these qualifications he can vote ; if he lacks any he can not vote. The Constitution, in defining the qualification of voters, makes one of the qualifications to be " if he shall have been duly registered according to law." When a valid law for the registration of all voters shall have been enacted, as required by the Constitution, then registration will be as much a qualification as age or residence.   The qualifications of voters must be uniform ; one voter must possess the same as another, and he need possess no more.   Where, as under our Constitution, registration is a qualification, one voter can not be required, by a law, to register, while another has the right to vote without registering.   Indeed, such a discrep-

ancy would invalidate a law even if the Constitution was silent as to registration.

Under the Constitution of this State a male citizen of the United States over the age of twenty-one years, who has been a resident of this State for six months prior to any election, may, up to sixty days prior to such election, exercise the right to move and change his residence from county to county and from township to township within the State as often as he may desire, but from that time forward he must have a fixed residence in the county and township where he intends to vote, but he may still continue to change his residence from precinct to precinct up to thirty days prior to the election, after which time he must have a fixed residence in the precinct to be entitled to vote. The Constitution grants to every voter the right of changing his intention and residence from county to county and township to township up to sixty days before an election, and of still continuing to change, if he so desire, from precinct to precinct up to thirty days before an election. Nothing is required of the voter up to sixty days prior to the election except that he reside in the State. The Constitution does not require of the voter that he fix or designate his residence in any particular township up to sixty days prior to an election. From that time forward he can not change his residence from one township to another if he desires to vote. The same is true in regard to the precinct up to thirty days before an election; the voter is left free to change his intentions and residence up to these dates.

These privileges belong to, and are exercisible by, every qualified voter of the State, whether he be temporarily absent from the State for a day, a month, a year, or even longer, or not absent at all. A mere temporary absence does not in any way affect his residence or his right to vote under the Constitution, but section 13, *supra*, provides that persons who absent themselves from the State for a period of six months, and persons who have not resided in one county for

six months before any election, shall register as provided by such section ninety days before the election to entitle them to vote, and they are required to produce the certificate of registration before voting.

While this section is indefinite in some of its provisions, and its meaning and purpose somewhat obscure, yet it seems to us that the reasonable construction to be given to it is that such voters shall declare their intention to become qualified voters, and fix and designate the respective precincts of which they are residents and entitled to vote ninety days before an election, and that upon presentation of their certificates of registration they shall have the right to vote in the precinct so designated, and that it requires of such voters that they designate their voting precinct ninety days prior to an election, and is, in fact, requiring a fixed residence in the precinct ninety days previous to an election, and in this particular at least it is an abridgment of the rights of such voters, and is in direct conflict with the Constitution. It seems to us that the construction we place upon this part of the section is the only reasonable construction it will bear. It certainly was not the intention of the Legislature to require such voters to designate their particular place of residence, even to their exact lodging place, as required by the notice, in some voting precinct other than that in which they would have a right to vote; or, in other words, to require them to designate their particular lodging place in one precinct ninety days before an election, and yet recognize the right of such voters to change their residence sixty days after registering and vote in another precinct, and make the evidence of the registration proof of their right to vote in a ward or precinct other than that designated in the notice of registration.

This section also provides that the registration books shall be kept open at all times to the inspection of the public. Certainly the object of such registration, and the keeping of the books open to the inspection of the public, are for the

purpose of requiring such voters to fix and designate their residence and voting places ninety days before the election, and affording information to the public as to the residence and lawful voting places of such persons. But if we are in error in this construction, the provision is obnoxious to the Constitution and void for other reasons.

It is a well settled rule of law that " when the Constitution defines the circumstances under which a right may be exercised, or a penalty imposed, the specification is an implied prohibition against legislative interference, to add to the condition, or to extend the penalty to other cases." This language of Judge COOLEY is quoted with approval by the court in the case of *Quinn* v. *State, supra.* See, also, Mechem Pub. Offices and Officers, section 148, *State* v. *Williams, supra,* and *State, ex rel.,* v. *Tuttle,* 53 Wis. 45. In other words, where the Constitution commands how a right may be exercised, it prohibits the exercise of that right in some other way ; if exercised at all it must be exercised as commanded by the Constitution. The Constitution of this State, section 14, article 2, provides that the " General Assembly * * * shall provide for the registration of all persons entitled to vote." This provision defines how the Legislature shall exercise the right of requiring the registration of voters, that is, by providing that all voters shall register. This constitutional mandate is an implied prohibition against providing for the registration of any class, or for only a part of the voters, and this is consistent with the great weight of authorities upon the question of the validity of registration laws which hold that such laws must be impartial, reasonable and uniform.

Judge COOLEY states the law to be that "All regulations of the elective franchise, however, must be reasonable, uniform, and impartial ; they must not have for their purpose directly or indirectly to deny or abridge the constitutional right of citizens to vote, or unnecessarily to impede its exercise ; if they do they must be declared void." Cooley

Const. Lim. (5th ed.), p. 758. See, also, authorities herein-before cited.

In a well reasoned opinion in the case of *Attorney General v. City of Detroit* (Mich.), 44 N. W. Rep. 388, the authorities on the question are fully reviewed and considered, and it is held by the Supreme Court of Michigan, in that case, that a registration law is unreasonable and void if it provides for but five registration days during the year, at one of which the elector must make personal application for registration ; that it thereby disfranchises persons who are ill or absent on reg-istration days, but who would be able to vote on election days. It also holds the same act void because it is not im-partial, in that it requires a naturalized voter to produce his certificate of naturalization or show by evidence, other than his own oath, that such certificate was issued, while it permits a native-born citizen to prove his right to vote by his own oath.

The court in that case, after citing and reviewing numer-ous authorities, says : " These authorities all tend in one direction. They hold that the Legislature has the right to reasonably regulate the right of suffrage, as to the manner and time and place of voting, and to provide all necessary and reasonable rules to establish and ascertain by proper proof the right to vote of any person offering his ballot, but has no power to restrain or abridge the right, or unneces-sarily to impede its free exercise. This law before us dis-franchises every person too ill to attend the board of registra-tion, and unreasonably and unnecessarily requires persons whose business duties, public or private, are outside of De-troit to return home to register as well as to vote, making two trips when only one ought to be required." *Daggett* v. *Hudson*, 43 Ohio St. 548 (54 Am. Rep. 832).

Indeed, section 13, *supra*, seems to be aimed at a certain class of voters who may be absent from the State for a pe-riod of six months, either for pleasure or on business of a public or private character, and those at all times within the

State who may be compelled in order to obtain employment, or for other lawful purposes, to change their residence from one county to another within the six months next preceding an election, and it imposes a burden upon them which is not imposed upon other voters, and changes their constitutional privileges and rights, as it requires them to designate their particular residence and voting precinct, and prohibits them from again changing it at a time when, under the Constitution, they are not required to do so. It imposes extra burdens and hardships on these classes of voters. In this respect it is both unreasonable and not impartial.

Under the Constitution the rights of voters who are required to move from one county to another within six months, and prior to sixty days before an election, in order to obtain employment, or for other lawful purposes, and those who are compelled to be temporarily absent from the State for six months, or longer, to earn a living for themselves and families, or to recuperate their health, or for other proper motives, are as sacred under the Constitution as those whose circumstances are such as not to require them to change their residence to seek employment, or to be absent from the State for that or any other lawful purpose. The Constitution guarantees the same rights to all voters who are *bona fide* residents of the State.

If once admitted that the Legislature has the power to enact a law requiring persons who are absent from the State six months to register ninety days before an election, why may not a law be valid requiring persons who are absent from the State three months, or one month, or one day, also, to register? And if a law requiring a registration ninety days before an election is valid, why not a law requiring a registration six months, one year, or even a longer time before an election? If a law requiring all persons who are absent from the State six months to register, and none others, is valid, why would not a law requiring all foreign-born citizens, or all persons engaged in farming or manufacturing,

and none others, to register, be valid? If this law is valid which requires all persons to register who are residents of the State six months, but not residents of the county six months prior to an election, why may not the Legislature enact a valid law requiring persons moving from one ward to another, at any time within six months, and none others, to register? Indeed, it seems to us to be beyond controversy that if the present act can be upheld, aimed as it is at a class of travelling men, and men whose business, either of a public or private character, or ill health, may take from the State six months, and persons who may be required to move from one county to another to obtain employment, within six months preceding an election, and imposing, as it does, a burden upon this class of citizens, which is imposed upon none other, then the Legislature may enact a valid law relating to any class, designating them by nationality, place of birth, religious belief, professional, or business pursuits, and require them, and none others, to register. If this law, which requires a registration of this class of citizens ninety days before an election is valid, then any class of voters may be singled out, and burdens and duties imposed upon them which are not imposed upon others, and obstructing the right of suffrage as given to them by the Constitution of the State. It matters not whether this provision of the law be termed a registration of voters, or a provision requiring certain proof of the class of voters named to entitle them to vote; in either event the effect is the same, for it requires proof of qualifications to vote which the voter under the Constitution does not have to possess, and the effect of the law is the same, and it changes and abridges the rights of the classes of voters designated.

We believe this section of the law to be in contravention of the Constitution, in opposition to all authority, illegal and void.

As we have said, the Legislature has the right to pass a law requiring the registration of all voters, and the Consti-

tution expressly requires the passage of such a law, but under the provisions of the Constitution it must apply alike to all voters.    One class of voters can not be required to possess qualifications which are not required of all others.

Under the Constitution voters may change their residence from precinct to precinct up to thirty days prior to an election.    This right can not be impaired or taken from them by legislative enactment, and until that time has occurred they can not be required to designate their intended residence and  voting  precinct at a future election.    Up to that date they have the right to change their intention and place of residence as often as  their circumstances may require or as they may choose.    The right to so change their intention and residence is given to every voter by the Constitution and can not be abrogated or interfered with.    The authorities universally hold that registration laws must be impartial, uniform and reasonable, giving to all who have a right to vote a fair and reasonable opportunity to exercise such right.

The Constitution not only confers upon the General Assembly the power to make illegal voting an impossibility by a proper system of registration, but it makes it the imperative duty of that body to exercise that power.    The imposition of unauthorized burdens and qualifications not authorized by the Constitution upon a part of the citizens of the State is not an exercise of that power, and while we would regret to declare void any law having for its object the purity of elections, we can not so far forget our duty as to uphold a law so plainly in conflict with the fundamental law of the State as the section of the law under consideration.

The provisions of the section we have particularly considered and discussed render the whole section void, and we deem it unnecessary to further discuss the other portions of the section.    *State, ex rel.,* v. *Denny,* 118 Ind. 449 ; *Baldwin* v. *Franks,* 120 U. S. 678 ; *Norton* v. *Shelby County,* 118 U. S. 425.

Morris *et al. v.* Powell.

The conclusion we have reached being in harmony with the holding of the circuit court, it follows that the judgment must be affirmed.

Judgment affirmed, with costs.

Filed Oct. 8, 1890.

## SEPARATE OPINION.

MITCHELL, J.—Those provisions of the Constitution which define the right of suffrage, and prescribe the qualifications of persons entitled to its exercise, and those statutes which look to the guarding of the purity of elections and the integrity of the ballot-box, demand the gravest and most deliberate consideration whenever they are drawn into judicial discussion.

The right of the citizen, who possesses the requisite qualifications to vote, is to be jealously protected, and any statute, the effect of which is to abridge, alter or add to the constitutional qualification of the voter, or which imposes qualifications other than those prescribed by the Constitution, must necessarily fall under condemnation when subjected to a judicial test. *McCafferty* v. *Guyer*, 59 Pa. St. 109.

On the other hand, the fact must be kept constantly in view that the duty of prescribing rules and regulations for the orderly and honest exercise of the right of suffrage, and of providing reasonable safeguards for preserving the purity of elections, and for the prevention of frauds upon the ballot-box, has been committed to the Legislature, and when the judiciary ventures to strike down a statute enacted by the immediate representatives of the people in response to a demand for purer elections, being without power to provide another in the place of the one destroyed, it should be able to rest its decision upon ground that is absolutely sure and impregnable.

The purity of elections is subserved quite as effectually by the rigid exclusion of those who are not entitled to vote as by protecting the privilege of those who are.

It has been said, and repeated a thousand times, that courts have no concern with the policy, convenience or expediency of a public law. These are questions solely for the Legislature. Any decision, therefore, which obliterates from the public law of the State a statute designed to prevent fraudulent voting, and to give effect to the ballots of honest voters, should rest broadly upon the safe ground that the statute blotted out by the court is in clear violation of some express provision of the Constitution.

The test by which to determine the validity of every legislative enactment upon the subject of suffrage and elections is this : Does it add any substantive qualification or condition to those prescribed by the Constitution to the right of the voter to vote, or does it merely afford methods of proof by which to determine the presence or absence of the qualifications prescribed?

If it falls within the class first described, it is unconstitutional and void; if within that last described, no matter what courts may think of its expediency, it is a valid exercise of legislative power, and is not subject to judicial interference.

If the law is unwise or inexpedient, the Legislature is responsible, and it is for the people to apply the correction, and not for the court to substitute its judgment for that of the Legislature, or run a race of opinions upon points of reason and expediency with the law-making power.

The courts all agree that the Legislature can not prescribe conditions to the right to vote which shall add any substantive qualification to those prescribed by the Constitution, but it may prescribe modes of proof, such as test oaths, evidence of freeholders, or any other evidence which may be deemed efficient to disclose the presence or absence of the constitutional qualifications. The Legislature can not impair or abridge the right of suffrage in those who possess the constitutional qualifications, but it is clearly within the just

and constitutional limits of legislative power to adopt any reasonable and uniform regulation affecting the mode of exercising the right, in such a manner as to facilitate pure, orderly and honest elections, and to that end to require the voter to furnish evidence of his qualification by any provision of law not inconsistent with the right itself. *Capen* v. *Foster*, 12 Pick. 485.

Accordingly, it has been held that an elector may be required to furnish preliminary proof of his qualification to vote, and that this proof may be required either by a board of registration at a specified time before the election, or by an election board before receiving the vote of the elector. *In re Election of McDonough*, 105 Pa. St. 488.

"The necessity," said the Supreme Court of Wisconsin, "of preserving the purity of the ballot-box, is too obvious for comment, and the danger of its invasion too familiar to need suggestion. While, therefore, it is incompetent for the Legislature to add new qualifications for an elector, it is clearly within its province to require any person offering to vote to furnish such proof, as it deems requisite, that he is a qualified elector." *State, ex rel.,* v. *Lean,* 9 Wis. 279.

For example, an act of Congress defining the qualifications of voters in Territories subject to the jurisdiction of the United States, disfranchised bigamists, polygamists, and others living in prohibited marital relations. The Territorial Legislature of the Territory of Utah prescribed certain forms of proof which the voter was required to furnish in respect to his marital relations. This was recognized as a legitimate exercise of legislative power. *Murphy* v. *Ramsey,* 114 U. S. 15.

In like manner where it was a constitutional condition to the right of suffrage that the voter had not been engaged in acts of open rebellion against the authority of the United States, it was held that a provision requiring the voter to take an oath as evidence or in proof of his loyalty was a

proper exercise of power.   *Blair* v. *Ridgely,* 41 Mo. 63 (97 Am. Dec. 248).

The Constitution prescribes certain qualifications as conditions of the right to vote, but it is wholly silent as to the manner in which election boards, or registration officers, if such shall be provided for, shall ascertain the presence or absence of the prescribed qualification.   The fact of sex, citizenship, age, domicile within the State, township or voting precinct, are inquiries involved in the right of every person who claims the privilege of voting; and there can be no doubt but that the Legislature must either have the power to prescribe modes of proof upon these subjects, or the barriers against fraud and the prostitution of the elective franchise must be thrown down, so that elections instead of reflecting the choice of honest voters become a scramble between corrupt partisans to determine who shall excel in the pollution of the ballot-box.

The Legislature must have the power to provide by law the means of distinguishing the qualified from the unqualified voters, and this can only be done by providing a tribunal to decide, and by prescribing the means of obtaining evidence upon which a decision can be made.   The tribunal which shall decide, and the evidence upon which the decision shall be made, are matters exclusively within legislative control.

Does the statute in question, when subjected to the tests proposed, add new and additional qualifications to the right to vote, or does it merely require the voter to furnish the evidence that he possesses the constitutional qualifications? Does it alter or abridge the right to vote, or does it do anything more than afford evidence by which to distinguish the true from the false voter?

The constitutional qualifications relate to and affect the subjects of sex, citizenship, age and domicile, and certain general limitations in respect to the subjects mentioned are imposed upon the right of suffrage.   Other limitations than

those mentioned can not be imposed by legislative enactment, but as has been seen, the Legislature has unlimited and plenary power over the subject of the methods of proving that the voter possesses the constitutional qualifications.

It is pertinent to inquire to what extent, if at all, does the statute in question add new qualifications to the right to vote, or impose additional limitations than those above upon the exercise of the constitutional right?

The first substantive proposition contained in the statute is to the effect that any person who having been a resident of the State shall have absented himself therefrom for a period of six months or more, shall, at least three months before any election at which he intends to vote, register a notice, the form of which is prescribed, of his intention to become a qualified voter, in the office of the clerk of the circuit court of the county in which he resides. There is a proviso which renders the notice inapplicable to any person who six months or more before any election shall have registered notice of his intention to hold his residence in this State during a contemplated absence. The statute provides that upon the demand of any challenger or member of the election board, any person thus absent may be required to produce a certified copy of the notice so required to be registered before he shall be entitled to vote, which copy the clerk is required to furnish at the expense of the county. Having produced his certificate of registration, he shall then be entitled to vote unless the challenger or some other qualified voter of the precinct shall make a written affidavit that he knows, or is informed and believes, giving the name of his informant, that the person offering to vote is not a legal voter, in which case the person so offering shall, in addition to his certificate of notice and his own affidavit, produce the affidavit of a qualified person as to his right to vote. Like provision is made in regard to all persons who shall have gone into any other State or sovereignty with the intention of becoming a voter there, or who have during any absence

from the State voted in any other State or sovereignty, and also in regard to any person who shall not have been a *bona fide* resident of this State, and of the county in which he resides at least six months prior to any election at which he offers to vote.

It is as plain as any proposition can be that these provisions of the law relate exclusively to methods of proof by which to ascertain the constitutional qualification of voters; to distinguish between the true and the spurious. With the exceptions to be hereafter noted, they add no new conditions to the right of any person constitutionally qualified to vote, nor do they in the slightest degree impair, alter or abridge the right of any legal voter to cast his ballot. It is true a legal voter, when properly challenged, may be required to furnish certain proof of his qualification, but until it can be said that the Legislature can neither add to the constitutional qualifications of the voter, nor require any proof of those presented, except such as may suit the notions of the judiciary, it is difficult to find any ground upon which to set aside and annul the statute. If the court can obliterate a statute which requires one method of proof, then any and all other methods which the Legislature may devise are subject to judicial surveillance.

If, as has been truly and forcibly said, the legislative department, being the Nation or State itself, speaking by its representatives, has a choice of methods, and is the master of its own discretion, then upon what principle can the court interfere and declare the particular method adopted of no effect? *State, ex rel.,* v. *Haworth,* 122 Ind. 462.

If the court can say that a person who has absented himself from the State for six months or more, or one whose residence for six months or more prior to the election at which he intends to vote, has been unfixed, and of an ambiguous character, can not be required, upon being challenged at the polls, to furnish evidence showing that his intention was fixed at least three months before election to

claim his residence in the precinct in which he offers to vote, then it can for the same reason adjudge that he shall not be required to prove by the oath of a freeholder of the precinct that he is a legal voter therein. If the requirement that he shall produce a certificate showing his intention a specified time previous to the election is adding a new qualification, then the requirement that he shall procure the oath of a freeholder is doing the same thing.

The reasons which serve to annul one statute which prescribes a particular method of proof, are equally potent to strike down any statute which prescribes methods of proof. The result will be that the Legislature must either tie the hands of election boards, and have the ballot-box open for the reception of honest and fraudulent votes alike, or it must feel its way blindly until it strikes a method of proof which shall pass judicial scrutiny.

Requiring a person who offers to vote to produce a certificate, when he is challenged on the ground of non-residence, showing that he had declared his purpose to claim the right of suffrage before the heat, pressure, and excitement of election day, free from the solicitation of partisan friends, is not in any sense imposing an additional qualification, or abridging the right to vote, any more than requiring a voter to go to a specific place to vote, or to cast his ballot within specified hours on a given day, or to fold his ticket in a prescribed manner, or to prove by his own oath, or the oaths of other parties, his right to vote when challenged. *State* v. *Butts*, 31 Kan. 537. As is pertinently said by BREWER, J., in the case last cited : " If the Legislature has the right to require proof of a man's qualification, it has a right to say when such proof shall be furnished, and before what tribunal ; and unless this power is abused the courts may not interfere."

It is no argument which a court can consider at all to suggest that isolated instances may occur where a person absent from the State may be prevented, by sickness or other

unavoidable cause, from registering the required certificate within the time prescribed, and it is equally impertinent to suggest that the nature of the employment of others may render it inconvenient, or even expensive, to return to the State at or prior to a designated time in order to record a declaration of their intention to vote. All laws designed for the prevention of great wrongs impose hardships occasionally on good men, while holding back the horde of evil doers for whose restraint they were enacted. They are not, however, for that reason to be declared unconstitutional. It might, with equal reason, be urged that the law requiring electors to cast their ballots on a particular day, at a specified place, was unconstitutional, because it omitted to make provision for those too sick to attend the polling place, or for those who are unavoidably absent from the State on election day. Nearly every law that has ever been passed, requiring registration of some kind to be completed a specified time before election day, has · been assailed with these arguments, but in no case that has been followed as authority have these arguments proved availing. *State* v. *Butts, supra,* and authorities cited ; *Patterson* v. *Barlow,* 60 Pa. St. 54; *People, ex rel.,* v. *Hoffman,* 116 Ill. 587 (56 Am. Rep. 793).

Notwithstanding an isolated decision or two to the contrary, the authorities overwhelmingly sustain those provisions in election laws which require voters to afford the means for determining their qualifications prior to the haste and confusion of election day, and while exceptional cases of inconvenience, or hardship, may arise, this is nothing more than may often result from the fact that the right to vote is fixed at a certain place, on a certain day, and between fixed hours. Hardship or inconvenience is no test of the constitutionality of a law; besides, what objection can an honest voter make to a law that enables him, by his own act, to relieve himself of the unfounded aspersions which unfriendly partisans are always ready to cast upon him when, after a tem-

porary absence from the State, he presents himself at the polls to vote? What better or more satisfactory evidence can there be of a residence, complete and maintained, than the personal appearance of the elector on the day of election, claiming his right, with a certified copy of a declaration made before the dust and smoke of the campaign had arisen showing that the question of residence was not an after-thought engendered by the heat and excitement of the campaign?

Is not such a law as this promotive of honest voting? And does it not afford to an honest voter a safe and dignified method of establishing his residence, without being compelled to deliver himself over to the ward politicians to be "put through" according to the devious methods which are sometimes practiced? Without question a law like this will sometimes work a hardship to an honest man, but that is not the fault of the law. The fault lies in the conditions which require the enactment of such a law. Is it necessary because an honest man may occasionally suffer wrong or inconvenience to nullify the statute with the sure consequence to follow that illegal voters and rogues shall have full swing to debauch the ballot-box without let or hindrance? As was in effect said in *Patterson* v. *Barlow, supra:* What injustice is done to the real electors by requiring all those without fixed residences, or who have maintained an ambiguous residence, to appear in person before some officer and declare their residence at a specified time before election day? What clause of the Constitution forbids that a voter should be required to furnish evidence of his residence beforehand, rather than engage in a scramble for dubious evidence in the hurry and confusion of election day?

The act is assailed because it is said the Constitution imposed upon the Legislature the duty of providing by a general law for the registration of all voters, and that inasmuch as this statute only requires certain persons whose residence

is of an ambiguous character to register, it is, therefore, void.

Whether a law is general or not, does not depend upon the number of persons who fall within its scope or operation. Laws are general not because they operate upon every person in the State, but because every person who is brought within the relations and circumstances provided for is affected by the laws. *Hancock* v. *Yaden,* 121 Ind. 366 (374). The statute under consideration affects no particular class of persons. It affects all alike who come within the relations and circumstances upon which it operates. The only fair assumption is that the law is aimed at persons who seek to vote illegally. Any other assumption is a reflection upon the Legislature that ought not to be made.

It is, in some respects, a misnomer to call the statute in question a registry law. While it is quite true that the words "register" and "registration" are employed in the statute, its provisions bear little or no resemblance to a registry law. The act simply provides for certain modes of proof, in the cases of persons who offer to vote, upon the subject of their residence. This proof is not required to be made to a board of registration, or before a registering officer, but to the election board. The evidence required is to consist of a written declaration, or statement, made by the elector, and filed with a public officer, such a length of time before the election as to rebut any presumption that the pretence of residence is merely to secure the right to vote. The sole purpose of the statute is to provide a method of proving residence, and not to secure a registry of voters of a particular class. The statute is to be judged, not by what it is called, but by its language, scope, and purpose. But conceding it to be a law requiring a partial registration, by which is meant a registration which applies to all citizens, under certain conditions or circumstances, while it has no application to others in a different situation, can the statute be maintained? The question is not a new one. It has been de-

cided in the affirmative again and again by courts of the highest authority in the land. A constitution would, indeed, be "deformed and sterile" if a law designed to protect the ballot-box, in great centers of population, from falsehood and fraud, should fall under condemnation because it did not also include the rural districts, where the necessity for such a law did not exist. Equally sterile and deformed would be a constitution under whose provisions a law could be justly condemned which required proof of a specified kind as to the qualification of all voters under a given state of circumstances, because it omitted to require the same kind of proof from all other persons, whether they came within or under the designated circumstances or not.

Let it be conceded that the Constitution requires the Legislature to provide for the registration of all voters in the State, how does it logically follow that it prohibits the enactment of a law which requires all voters under certain conditions, viz., those having for the time being no fixed residence, to register a notice of their intention to claim the right to vote in a particular voting precinct?

Premise : It was the duty of the Legislature to enact a general registry law. This duty it has failed to perform. Conclusion : Having failed to perform this duty, the courts will declare any law that it may enact requiring voters when challenged on election day to furnish certain proof of their qualification to vote unconstitutional. This is the argument in substance.

To say that because the Legislature omitted to perform a given duty, it is thereby prohibited from taking any step in the direction of the duty prescribed, is to violate all legal precedents as well as to go against all logical reasoning. The rule is that a body invested with a certain power may exercise the power with which it is vested to any degree not in excess of the whole. So, when the chief executive, being invested with the whole pardoning power, paroled a prisoner on condition of good behavior, it was contended that he must

exercise the whole power or none.   It was held, however, that being invested with the whole power, it was lawful for him to exercise it in any degree.   Accordingly, too, it has been held in numerous cases, where the enactment of laws providing for a uniform system of registration was required, that statutes requiring voters in certain designated cities, or in cities of a certain class, to register within a specified time prior to any election are valid. *Patterson* v. *Barlow, supra; State* v. *Butts, supra; People, ex rel.,* v. *Hoffman, supra.*

These decisions recognize the principle that the purity of the ballot-box must be protected from the local and particular frauds and evil practices which are known to exist, and which disfigure and destroy the freedom and fairness of elections.   Any other interpretation of the Constitution must operate as an incentive to fraud which the Legislature is without power to arrest.

Laws designed to protect the ballot-box must strike at the pernicious practices which are known to be employed in order to nullify the votes of the honest voter.   A law blind to the vicious methods of the dishonest politicians, applied alike to every voter, might prove a delusion and a snare.   A registry law which made no different provision for the registration and proof of domicile of those having no fixed abode, from that required of permanent residents, would be an absurdity.   To say that a law is to be so general that it must open the door for the very evils it was intended to guard against is to effectually tie the hands of the Legislature from enacting any law to preserve the purity of the ballot-box.   *Commonwealth* v. *McClelland,* 83 Ky. 686.

In so far as the law seems to require a voter who moves from one county to another to register a notice of his intention to vote in the county to which he removes, three months before the election, it is, in my opinion, invalid.   *Page* v. *Allen,* 58 Pa. St. 338; *Commonwealth* v. *McClelland, supra; Attorney General* v. *City of Detroit* (Mich.), 44 N. W. Rep. 388.

Morris *et al. v.* Powell.

A voter who moves from one county to another sixty days before an election, is entitled to vote in the township in which he establishes his residence. This statute seems to require such a voter to register or give notice three months before the election of his intention to vote. This can not be required. To the extent that the statute requires an elector who moves from one county to another to register more than sixty days before the election it adds a new qualification.

Nor can the statute be upheld wherein it undertakes to require of any voter as a condition to his right to vote that he should procure a certificate from the auditor of the county showing that his name had been continuously on the tax duplicate of the county for a given period. This last is a condition that might well imply a property qualification, and is in addition to those prescribed in the Constitution. As has been in effect said, a registry act which would require a longer residence prior to the time of voting than that required by the Constitution, or which should require the payment of taxes not required to be paid by constitutional provision, would be void. McCrary Elections, section 8; *Kinneen* v. *Wells*, 144 Mass. 497.

To the extent that the statute requires persons who have absented themselves from the State for a period of six months or more, or those who have gone into any other State or sovereignty with the intention of voting there, or who have voted in any other State or sovereignty during any absence from this State, and also to the extent that it requires persons who have not been *bona fide* residents of the State at least six months before any election at which they offer to vote, to present the required certificate of their intention, it should be held constitutional and valid. To the extent that it requires persons who have lived in the State for six months, but who move from one county to another, to present the proof prescribed, and to the extent that it requires proof that the voter has been borne on the tax duplicate, it is invalid.

Filed Oct. 8, 1890.

## SEPARATE OPINION.

ELLIOTT, J.—The questions for decision, although they arise on a single section of the statute, are of the gravest importance inasmuch as they concern the highest right of citizenship, and it is, therefore, not improper that separate opinions should be expressed. No other questions face us except such as arise upon section 13 of the election law of 1889, and the decision of those questions does not affect other provisions of the act, nor can it do so, for the section is an independent one and its downfall carries no other part of the act. Nor do I deem it necessary for us to decide whether there are not some provisions of the section which, if separated and put in proper form, might be valid, for the entire section, with its provisions interlocked beyond the power of severance, is before us for judgment, and we can only give judgment upon the section as it is written. *Griffin* v. *State, ex rel.,* 119 Ind. 520; *Baldwin* v. *Franks,* 120 U. S. 678.

It is proper to say, by way of introduction, that the question is what a Legislature may do, acting under a written constitution which gives it all the power respecting the right of suffrage that it possesses, and not what may be done by Congress, or by a territorial legislature acting under a law of Congress, nor what may be done by the people in framing or amending a constitution.

The thirteenth section of the act of 1889, construed as I think it must be, requires one who has not resided for six months in the county where he claims the right to vote to register his intention to become a voter ninety days before the election, thus requiring of the citizen two things, viz.: that in order to be entitled to register, he shall have resided in the county six months, and that he shall register his intention to become a voter ninety days before the election. He is required by these provisions to reside in the county in order to acquire the character of a voter a much longer time

than the Constitution requires, for it requires a residence of only sixty days. It is entirely safe to affirm that no one will question the proposition that the Legislature has no power to require a longer residence than that fixed by the Constitution. The affirmation of this proposition leads, beyond the possibility of cavil, to the conclusion that the provisions referred to are utterly destitute of force.

There are, however, other objections to the validity of section 13, which seem to me to be insurmountable, and these objections go to the entire section, as its provisions are so interwoven as to be incapable of severance, and are, to my mind, so palpable that it is impossible to avoid perceiving them, or to escape their force.

It may not be improper to preface the direct statement and discussion of these objections by affirming that it is not because the Legislature does not possess power to enact a general registry law that section 13 is invalid, for no one who studies the language of the Constitution, or heeds the history of the amendments of 1881, can doubt that it was the purpose of the people to invest the Legislature with power to enact a general registry law. But, while this is true, it is also true that no other conclusion will square with the judgments of candid men than this : The Legislature can enact only such a law concerning the right of suffrage as the Constitution authorizes. This, therefore, is the central question : Is the thirteenth section of the election law of 1889 such an enactment respecting the right of suffrage as the Constitution authorizes?

The question is one of power. If the Constitution authorizes such enactments as those contained in section 13, the power exists, and the section must stand ; if the Constitution does not authorize such a law, the power does not exist, and the section must fall. With questions of policy or expediency courts have nothing to do, but it is their duty to determine whether there is, or is not, power to enact a law. The power which the General Assembly assumed to exercise

is not an ordinary legislative power, for, in assuming to legislate upon the subject of the qualifications of voters, that body entered into the domain of those in whom original power resides, and from whom all legislative powers are derived. The people control the subject of the right of suffrage, and legislative assemblies have only such power over that subject as the people have granted them by the organic law.

That the Legislature can not add to the qualifications of voters is a proposition upon which there is no diversity of opinion. Cooley Const. Lim. 78, *n.* It would be strange, indeed, if the Legislature could add qualifications to those prescribed by the Constitution, for the right of suffrage is a political right, and it is the right of a sovereign. The people are above the Legislature, and they are there because the Legislature has no power to abridge or qualify the sovereign right of suffrage.

Section 13 violates the Constitution by assuming to classify the voters of the State, and by adding qualifications to those prescribed by the Constitution. It assumes to divide the voters into taxpayers and non-taxpayers, and to add to the requirements of the Constitution the requirement that the citizen shall be recorded as a taxpayer. It violates the Constitution by assuming to classify voters into those who remain continuously in the State and those who temporarily absent themselves from it. Where the Constitution makes a classification, a different one can not be made by the Legislature. Our Constitution does make a classification, for it specifically provides who shall be eligible to vote. Where the Legislature exercises the power conferred upon it, and enacts a registry law, then registration is essential to qualification ; but where there is no such law registration can not be made essential, for in the absence of a registry law the sole qualifications of a voter are citizenship, age and residence.

The General Assembly has no power to enact a law oper-

ating through a classification exclusively its own.   This is, indeed, a corollary of the proposition that it has no power to classify voters except by following the Constitution.   Under the Constitution the Legislature has power to make two classes, registered and unregistered, but it can not create a third class.   *Attorney General* v. *City of Detroit* (Mich.), 44 N. W. Rep. 388.

If the power to classify exists in one case it exists in all. No one will deny that if the Legislature has power over a subject it is master of its own discretion and may enact any law it chooses.   Grant the power and the discretion is unlimited.   If the Legislature has power to make the classification attempted in section 13, then it may provide that only naturalized citizens shall register, or that farmers shall register and no others, or that commercial travellers, temporarily absent in the line of their business, shall make affidavits and record their names although such things may be required of no other citizen.   In short, if the power exists the Legislature may make any classification it pleases.   To my mind it is perfectly clear that it can do no such thing. It can not in any form classify the fundamental political right of suffrage, except as the Constitution expressly authorizes it to do.   Such a right is infinitely higher than legislative authority can climb.   No matter what form legislation may assume it is utterly void if it touches upon the right of suffrage in a mode not authorized by the Constitution.   The name given the legislation adds nothing, for a name can no more change its substance than a name can change the odor of a rose.

The provision of section 13 assuming to impose upon a citizen who has resided in the State for the period prescribed by the Constitution the duty of making an affidavit declaratory of his intention to become a voter, is in violation of the Constitution, and so, too, is the provision which assumes to require a citizen who has been temporarily absent to swear that he has not voted elsewhere.   A citizen who does what

the Constitution requires can not be required to do more. If he fixes his character as a voter by a residence for the time .designated by the Constitution, the incidents inseparably connected with that character are beyond legislative touch. The principle here asserted has been declared by our own and by other courts. We must adhere to it or overrule our own decisions and disregard those of other States. *Quinn* v. *State*, 35 Ind. 485; *Feibleman* v. *State, ex rel.*, 98 Ind. 516; *Rison* v. *Farr*, 24 Ark. 161; *Davies* v. *McKeeby*, 5 Nev. 369.

It is no answer to many of the propositions I have affirmed to assert that the.classification attempted is valid because all who belong to a designated class are put upon an equality, so that if it were conceded that the assertion responds to some of the propositions affirmed and is valid, the act, nevertheless, still remains undefended, for any one of the propositions affirmed is fatal to its validity. But it can not be justly conceded that the classification is valid. When the question is examined it will be found that the proposition that the equality of the classification rescues it from condemnation has not the poor merit of plausibility; it is, indeed, so thinly apparelled even in plausibility that when brought to the touchstone of principle all semblance of strength vanishes.

The General Assembly has no power to classify voters except as the Constitution expressly provides, no matter what system it may adopt. This is so for the invincible reason that the prerogative of conferring and defining the right of suffrage is that of constitution makers, and not.that of the creatures of constitutions. The electors who frame constitutions and give being and power to legislatures are above the created things, and legislators can not reach above themselves to the source of their power and the authors of their existence for the purpose of enlarging or restricting the sovereign right of suffrage. If it were otherwise, legislators would be the masters, and masters they are not. If

the Legislature can limit, or even define the right of suffrage, then it is greater than its constituency, but it can do nothing of the kind, for the right of suffrage is not subject to legislative power.

The right of suffrage is a political right of the highest dignity. It is a right of which, as the courts have declared, no department of government, nor all of them combined, can divest the citizen otherwise than in the mode and to the extent expressly authorized by the Constitution. *State* v. *Adams,* 2 Stew. (Ala.) 231. It is because the right of suffrage is a political right, abiding in the fountain of power, that the Legislature can not lay so much as a finger upon it, except when expressly authorized by the organic law, and for this reason it is that the Legislature can not make a classification of its own, no matter whether there is or is not equality. It is because the right of suffrage is a political right, as has been decided by the Supreme Court of the United States, and by other courts, that the provisions of the Constitution respecting the bestowal of special privileges and immunities have no application to legislation upon that subject. These decisions demonstrate the proposition that those provisions apply only to rights in the nature of property interests, and not at all to political rights. *Minor* v. *Happersett,* 21 Wall. 162; *Bradwell* v. *State,* 16 Wall. 130; *Amy* v. *Smith,* 1 Litt. (Ky.) 326; *Anderson* v. *Baker,* 23 Md. 531; *In re Taylor,* 48 Md. 28; *Brown* v. *Hummel,* 6 Pa. St. 86. To me it seems very clear that neither the decisions made under those constitutional provisions nor the provisions themselves can have the remotest relevancy to cases involving only high political rights of which constitutions are the framers and rulers. The right of suffrage is one for the consideration of the people in their capacity as creators of constitutions, and is never one for the consideration of the Legislature, except in so far as the Constitution authorizes a regulation of its mode of exercise. The people create, define, and limit their own right to vote; no legisla-

ture can do that for them, although the Legislature may be authorized to regulate the mode of exercising this right. Power to regulate the exercise of the right is not power to legislate upon the substantive right itself. The right is a transcendent one, and is far beyond legislative dominion. It would, therefore, be illogical in the extreme to assert that the framers of the Constitution meant to prohibit class legislation upon a subject where, without an express grant of power, there is no authority to legislate at all.

The provisions of section 13 assume to do much more than prescribe a mode of procedure. They assume to legislate upon the substantive right itself, and to prescribe conditions precedent to the right to vote. They do more than declare what evidence a citizen whose right is challenged shall produce; they assume to declare what he shall do before he can acquire the character of a voter. If the provisions are of any force at all they require that the citizen shall be a taxpayer, and as such recorded ; that he shall not only reside in the State and county six months, but that he shall also swear that he intends to become a qualified elector, and they also require that a citizen who has been temporarily absent, although he is otherwise as fully qualified as the Constitution requires, shall swear that he has not voted elsewhere. Elliott's Supp., section 1335. These requirements, every one of them, concern the substantive right and add qualifications to those prescribed by the paramount law, to which all legislation must yield. The Supreme Court of Oregon, in a strongly reasoned opinion, denies that registry can be considered a matter of procedure, and says : " The true view of this question seems to be that stated in *State* v. *Baker*, 38 Wis. 86—that where registry is required as a prerequisite to the right to vote, such registry is a condition precedent to the right itself." *White* v. *Commissioners, etc.*, 13 Ore. 317. In the course of the opinion it is said : " But under this act, he who goes to the polls on election day, possessing every constitutional qualification, may find that the Legislature has stepped in

between him and the Constitution. He finds his vote denied because he has not done something which the Legislature has required him to do. He discovers that he is not a qualified elector, and yet he is told that his omission to do the act which had effect to disqualify him, is not a disqualification." The court adopts as the law the statement of Mr. Drake, that "Every definition of the qualification of voters is but a statement of the terms on which men may vote; and in every instance such definitions refer to what a party has done as well as to what he is [to do]. They say to the voter: 'If you have done certain things, you may vote.'"

The thirteenth section of the act before us does say to the citizen what he must do in order to be entitled to vote, and in doing this assumes to prescribe the terms upon which he may vote, thus stepping in between him and the Constitution, and adding qualifications to those which that instrument requires. That the legislation embodied in section 13 does assume to control the substantive right itself, and that this assumption of power is in direct and irreconcilable hostility to the Constitution is a conclusion which seems to me to be beyond debate.

Filed Oct. 8, 1890.