BOEHM, Justice,
dissenting.
I respectfully dissent. In broad brush, the issue in the federal constitutional challenges to Indiana's voter identification law was whether the burdens this requirement imposed on some citizens' right to vote were severe enough to overcome the presumption we give to all acts of the General Assembly. The Supreme Court of the United States resolved that issue against the plaintiffs, at least as far as any provision of the Federal Constitution is concerned. Crawford v. Marion County Election Bd., 553 U.S. 181, 128 S.Ct. 1610, 1615, 170 L.Ed.2d 574 (2008). The majority for the most part addresses this case as if that were the issue before us today. The majority categorizes the voter ID requirement as a regulation implementing the registration requirement and concludes that a regulation is valid if "reasonable and uniform." The majority dismisses the acknowledged problems that some voters may have in obtaining a voter ID as justified by perceived benefits in the integrity of the election.
As I see it, the state constitutional claim is quite different. The principal issue in this case is not a balancing of the relative benefits, if any, of a voter ID requirement against the problems that requirement creates for some citizens, if perhaps relatively few. The central question is who gets to resolve that issue under the Indiana Constitution. Under our Constitution some issues are immunized from revision by the temporary majority that comprises one session of the legislature, and must be addressed by the more deliberate and time consuming process of constitutional amendment. Article 16 of the Indiana Constitution permits amendment of the Constitution by agreement of a simple majority of each house in two successive General Assemblies, followed by approval by the voters of this state. This process is far less difficult than the approval by two-thirds of each house of Con *774 gress and ratification by three-quarters of the state legislatures needed to amend the Federal Constitution. U.S. Const. art. V. But it nonetheless represents the decision of the framers of our State Constitution to reserve some issues from the normal legislative process and require a more deliberative process, more extended debate, and a consensus over a longer period of time than is needed for ordinary legislation.
One of the subjects that the Indiana Constitution reserves to the amendment process is the "qualifications" for voting. The question in this case is whether our State Constitution permits one session of the General Assembly to impose a voter ID requirement on Indiana voters, or requires that two successive sessions of the legislature agree that this measure is necessary, and then submit it to the voters for the people to make the final decision. For the reasons given below, I think both pree-edent and the language of the Indiana Constitution dictate that the voter ID requirement is an unauthorized qualification for casting a ballot. That requirement therefore can be imposed only if two sue-cessive sessions of the General Assembly and the voters of this state agree it is appropriate.
Article 2, Section 2 of the Indiana Constitution, entitled "Voting Qualifications," provides that "A citizen of the United States, who is at least eighteen (18) years of age and who has been a resident of a precinet thirty (80) days immediately preceding an election may vote in that pre-cinet in the election." This section pre-seribes three, and only three, qualifications to vote: citizenship, age of eighteen or more, and residence in the precinet. It is quite different from the provisions of the 1851 Constitution, which limited voting to males, required that voters be 21 years of age, and imposed much longer residency requirements. Importantly, until 1881, even registration of voters was not authorized by the Indiana Constitution. Registration is now constitutional, but that hook does not support the voter ID requirement, and there is no other basis in the Constitution to deny voting rights to those unable to produce a voter ID.
Over the years the Constitutional provisions relating to voting have been amended on five different occasions, for the most part relaxing eligibility requirements and expanding the right to vote to groups previously excluded. Ind. Const. Ann. art. 2, § 2, at 392-98 (West 2007). For our purposes the most important of these is Amendment 3, one of a group of nine constitutional amendments that were first submitted to the voters in the 1880 spring election but had been declared invalid in State v. Swift, 69 Ind. 505 (1880), for failure to receive the required voter approval. Amendment 3 was resubmitted and ultimately adopted in 1881. For the first time it added to the Indiana Constitution the power of the General Assembly to require registration of voters. That authority is found today in Article 2, Section 14(c), which provides in its entirety: "The General Assembly shall provide for the registration of all persons entitled to vote." The need for an explicit constitutional authority to support the registration requirement was set forth in Governor Porter's recommendation that the General Assembly resubmit the invalidated amendments to the voters. House Journal, Fifty-Second Session, 81, quoted in 2 Charles Ket-tleborough, Constitution Making in Indiana 178-80 (1916). After noting the potential for voter fraud without registering voters before the election, the Governor explained that the Indiana Constitution alone sets the requirements for voter eligibility, and the 1851 Constitution did not authorize a registration requirement. Id. at 178-79. As a result, without the proposed amendments, "No registration *775 law can be passed; the Constitution will not allow one." Id. at 179. In short, the voter registration we all accept today is itself a qualification for voting that requires specific constitutional validation. The courts have repeatedly confirmed Governor Porter's view that the legislature cannot impose qualifications for voting beyond those prescribed by the Constitution. E.g., Fritch v. State, 199 Ind. 89, 92, 155 N.E. 257, 258 (1927) ("When the Constitution defines the qualifications of voters such qualifications cannot be changed nor added to by statute."); Morris v. Powell, 125 Ind. 281, 287, 25 N.E. 221, 223 (1890) (invalidating as a qualification a requirement that voters absent from the state for six months produce a certificate of property ownership).
The majority finds the voter ID to be a reasonable implementation of the registration requirement. The problem, of course, is that the plaintiffs claim that some eligible citizens are unable or unwilling for various legitimate reasons to obtain a voter ID, particularly in light of the recent restrictions designed to address national security concerns. We ordinarily give wide latitude to legislative judgment on matters of reasonable relationship in classifications ereated by statute. But any limitation on the right to vote surely strikes at one of the core values embodied in the Indiana Constitution. As Justice Mitchell of this Court put it 120 years ago:
Those provisions of the constitution which define the right of suffrage, and prescribe the qualifications of persons entitled to its exercise, and those statutes which look to the guarding of the purity of elections, and the integrity of the ballot-box, demand the gravest and most deliberate consideration whenever they are drawn into judicial discussion.
Morris, 125 Ind. at 297, 25 N.E. at 229. Legislation governing who can vote, and how, is a product of a legislature that depends on elections. Only the judiciary can preserve the rights of the citizens against dilution by the elected branches of government. To borrow a phrase from federal jurisprudence, whether a matter is properly viewed as a registration requirement validated by Article 2, Section 14 therefore requires "strict serutiny." The voter ID does not pass that test because, at least as alleged in the complaint, it requires satisfying conditions designed to meet other regulatory purposes and thereby imposes conditions on voting not authorized by the registration provisions.
To the extent language from Simmons v. Byrd, 192 Ind. 274, 136 N.E. 14 (1922), suggests a more deferential standard of review of legislation imposing requirements in the guise of regulating the registration process, I believe that opinion went significantly further than the facts of that case required and should not be followed. The only issue in that case was the validity of registration requirements that have long been accepted in this state and are minimally necessary to operate a registration plan as Article 2 of the Indiana Constitution has authorized since 1881. The law in question dealt largely with the mechanics of registration and required of the voter only that the voter be registered, which could be accomplished in person or by mail or by delivery by another voter on the days designated, or by mail to the county auditor for delivery. To the extent the Simmons opinion suggested other more onerous requirements were permissible as registration regulations unless compliance was "practically impossible," it is dicta and should not be followed here. Id. at 286, 186 N.E. at 18.
The voter ID law before us today was passed 125 years after the Indiana Constitution was amended to authorize registration of voters. It enjoys no constitutional *776 footing beyond the authorization in Section 14(c) to "provide for the registration of all persons entitled to vote." The issue, then, is whether that section authorizes the General Assembly to impose the requirement that every voter present a state-issued photo ID. Otherwise put, the issue is whether the requirement that a photo ID be presented at the polling station is merely a registration requirement. We are told that Indiana's voter ID law imposes more stringent requirements than those demanded by any other state. Brief for Lawyers' Committee for Civil Rights Under Law at 12-18. That alone does not establish the plaintiffs' claim, but, as explained below, plaintiffs have alleged facts that, if established, demonstrate that the voter ID requirement goes beyond the demands of a registration scheme. If so, it violates the Indiana Constitution, and plaintiffs are entitled to their day in court to establish that claim.
This case comes to us as the grant of a motion to dismiss the complaint for failure to state a claim. We therefore accept the allegations of the complaint as true. No-blesville Redevelopment Comm'n v. Noblesville Assocs., 674 N.E.2d 558, 562 (Ind. 1996). Plaintiffs allege that not all registered voters possess a valid photo ID, and the photo ID requirement has prevented or discouraged an indeterminate number of voters from casting a vote that counts. Plaintiffs cite instances of voters who present themselves at the polls without a photo ID and are allowed to cast a provisional ballot, but then are unable or unwilling to complete the process required within the next ten days for the vote to be counted. Plaintiffs also allege other instances where registered voters have simply been turned away for lack of a photo ID. These allegations are sufficient in my view to survive a motion to dismiss the complaint. Moreover, in their briefs plaintiffs elaborate on the bare bones of their complaint to allege that compliance with the requirements for a photo ID is not a simple process for every voter, and that recent steps designed to enhance the driver's license and photo ID have further complicated that process. For example, voters who have remarried in another state, or were not born in a hospital, may face extreme difficulty in obtaining a voter ID in their current name. If so, the voter ID law goes beyond regulating the process of election, and disqualifies voters whom the Indiana Constitution declares to be eligible to vote.
The photo ID cannot be justified as a registration requirement for a second reason: some of the restrictions placed on obtaining a state-issued ID do not address the legitimate concerns of preventing voter fraud. The process of obtaining a photo ID is the product of a regulatory scheme that has nothing to do with voter fraud. Its requirements were originally designed to regulate motor vehicle operators, and have now been expanded to include elaborate provisions aimed at limiting access to many facilities, for example commercial air travel, for national security reasons. Moreover, a photo ID is not required in the process of registering to vote, nor is a photo ID provided to a person who registers to vote. Crawford, 128 S.Ct. at 1614; Ind. Election Div., 2010 Indiana Voter Registration Guidebook 8-21. But it is available to persons who are not citizens or are under the age of eighteen and cannot vote. And the photo ID is required to have an expiration date. These provisions, designed to assure competence of motor vehicle operators, render the photo ID ov-erinclusive as a voter registration requirement. It is also underinelusive because, in addition to carrying burdens unnecessary to a voter registration law, it fails to address the most obvious potentials for abuse of the registration process. To the extent we have instances of voter fraud, they *777 have been in the use of absentee ballots that are not subject to the photo ID requirement, not in instances of voters appearing at the polls claiming to be someone they are not. Pabey v. Pastrick, 816 N.E.2d 1138, 1140-41 (Ind.2004) (finding "a deliberate series of actions" that "perverted the absentee voting process"); see also Crawford, 128 S.Ct. at 1618-19 ("The record contains no evidence of any [in-person voter impersonation] actually occurring in Indiana at any time in its history"). The parties cite not a single instance of a voter appearing at the polls only to find that someone else has already cast his or her ballot. These problems, to the extent they exist, can be addressed as some other states have done by requiring some reliable evidence that the person shown on the registration lists still resides at the address shown on the polls. This can be done by producing utility bills and bank statements, as some states have done, or the traditional Indiana solution of requiring an affidavit from a challenged voter that the person is who he or she claims to be.
I also find problems in the majority's analysis of the plaintiffs' claim that the voter ID statute violates the Equal Privileges and Immunities Clause found in Article 1, Section 28 of the Indiana Constitution. That Clause provides
The General Assembly shall not grant to . any class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens.
On its face, the voter ID law grants a privilege-voting without a photo ID-to some classes of citizens, but not to all. The majority dismisses some of the plaintiffs' claims as insubstantial because only a small percentage of voters are in the favored classifications. But a small number of voters can determine the outcome of an election, as the national experience with the 2000 Florida presidential election demonstrated so dramatically. And even if the majority were correct that the statute may be saved because it disenfranchises only a few voters, there is nothing in this record that permits us to determine the number of affected voters. Most importantly, I believe we all have an interest in a full and fair electoral process, and the right to vote is of value only if others are granted equal access to the polling booth. A statute that wrongly denies any group of citizens the right to vote harms us all, and therefore may properly be challenged as invalid in its entirety, not merely as to those directly affected. Thus I do not agree with the majority that the remedy the plaintiffs seek here-invalidating the voter ID requirement-is beyond their grasp.
The majority does not address the plaintiffs' claim that the voter ID requirement violates Section 23 because it imposes substantially greater burdens on some citizens than it does on others. This claim also presents an issue for trial. We have recognized that "a statute that is constitutional on its face may be unconstitutional as applied to a particular plaintiff." Humphreys v. Clinic for Women, Inc., 796 N.E.2d 247, 257 (Ind.2008). That doctrine has been held specifically applicable to claims under Section 23. Id. at 258. I think it is clear that a statute need not create the classification in order to violate Section 28 by conferring privileges on some citizens that are not available to all. To illustrate that point, consider a statute that provides that all voters must transport themselves to the polls on foot, but excludes from that requirement persons in wheelchairs and those over eighty years old. On its face these exelusions are reasonable, but the statute nonetheless has a dramatically different effect on persons who live at remote locations from the polling booth. Ordinarily a claim of unconstitutionality by reason of uneven impact on *778 different persons would sustain a claim of relief only by the adversely affected individuals.
As a final point, because the majority finds the law constitutional, the majority is not required to address the State's contention that these plaintiffs do not have standing to challenge the voter ID law, and does not do so. I believe all citizens have the standing to attack a statute that unconstitutionally denies any voter the right to exercise his or her electoral franchise. We all have an interest in an election that is lawful, and the right to vote is meaningful only if others of like mind are also entitled to vote according to the Constitution. Indeed, it is difficult to conceive of a right that is more clearly a "public right" than the right to vote and participate in a lawful election. It therefore may be enforced under the public standing doctrine long recognized by this Court and most recently reconfirmed in Cittadine v. Department of Transportation, 790 N.E.2d 978 (Ind.2003).
In sum, the plaintiffs' allegations of substantial impediments to the exercise of the right to vote are sufficient to withstand a motion to dismiss the complaint. I would remand this case to permit the plaintiffs to attempt to prove their case.